**STATE of Missouri, Respondent,**

v.

**Edgar BILYEU, Appellant.**

No. 17476.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 23, 1993.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 8, 1993.

Application to Transfer Denied
Jan. 25, 1994.

J. Gregory Mermelstein, Office of the State Public Defender, Columbia, for appellant.

William L. Webster, Atty. Gen., Robin H. Grissom, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, C.J.

Edgar Bilyeu (defendant) was convicted, following a jury trial, of sexual abuse in the first degree, a class D felony. § 566.100.[1] He was sentenced to imprisonment for a term of five years. This court affirms.[2]

Defendant subjected his 10–year old daughter to sexual contact. He does not challenge the sufficiency of the evidence. He bases his appeal on a contention that he was denied effective assistance of counsel; that he was compelled to proceed to trial without counsel.

Information was filed in this case June 13, 1989. Defendant was arraigned June 16, 1989. Although defendant did not provide this court with a transcript of the arraignment as part of the record on appeal,[3] the trial court's docket sheets, copies of which are included in the legal file, reflect that he appeared pro se; that he pleaded not guilty to the offense charged and was ordered to appear July 14, 1989, for pre-trial conference.

A docket entry dated July 14, 1989, states: Pre-trial called. Deft appears pro se & advises he will be representing himself. Case to be set for 1 day (J).

A docket entry dated August 15, 1989, shows the case set for jury trial on November 2, 1989. It states that defendant was notified of the trial setting. The case was not tried on November 2. A docket entry dated November 14, 1989, states, "Case set for Jury Trial March 8, 1990 Division 1." It states that the defendant was notified.

On March 8, 1990, the case was called for trial. The trial court inquired about defendant proceeding without counsel and found that he freely, voluntarily and intelligently waived his right to counsel. Defendant told the court that he was not represented by counsel; that he had not been represented by counsel at any stage of the proceedings. He acknowledged that he understood the offense charged was sexual abuse in the first degree, a class D felony; that if he was convicted, the maximum punishment was confinement in the Department of Corrections for five years.

The trial court asked, "And you have chosen to represent yourself in this matter?" Defendant did not respond. The trial court then inquired if he had attempted to hire an attorney. Defendant answered, "Yes." The judge asked, "And what was the problem?" Defendant answered, "Lack of funds." Defendant stated that an attorney wanted a retainer of "fifteen to twenty-five hundred dollars" before trial "and then another payment." He did not know the exact amount of the fee that had been requested but stated it was "around $5,000.00 more after it was over with."

Defendant told the trial court that he posted a $10,000 bond. The judge asked if he made application to be represented by a public defender. Defendant answered, "Yes." Defendant explained that he sought representation by a public defender when his case was "back in the Associate Division"; that the public defender did not accept his case. The judge asked if defendant was told why the public defender did not accept his case. He answered, "They said I was making too much money."

Defendant stated that he was employed by the Horseshoe Bend Special Road District.

---

1. References to statutes are to RSMo 1986.

2. Defendant filed a Rule 29.15 motion that was the basis for the appeal in *State v. Bilyeu,* 832 S.W.2d 522 (Mo.App.1992). Following remand, the motion court entered findings of fact and conclusions of law and dismissed the Rule 29.15 motion. Defendant does not appeal that order.

3. An appellant has the ultimate responsibility for preparing and filing a transcript that incorporates all proceedings applicable to the appeal. *State v. Clark,* 671 S.W.2d 1, 3 (Mo.App.1983).

His monthly earnings were "around nine fifty, nine eighty-five, some place right in there." Defendant was not supporting a family although he stated he was supporting a fiancee "in a roundabout way." He explained that his fiancee and her twenty-one month old baby were living with him. The baby was not his child. The trial court again explained to defendant that he was charged with a serious offense. Defendant was asked the following questions and gave the following answers:

THE COURT: And you understand that you have a right to have counsel, and that if you do not qualify for the public defender, that it is your responsibility to hire counsel or to proceed to trial without counsel. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And you understand that going to trial without an attorney, you are going to be at an extreme disadvantage?

THE DEFENDANT: Yes.

THE COURT: And you have not hired an attorney?

THE DEFENDANT: No.

THE COURT: And you understand—do you understand that by not hiring an attorney, that you have voluntarily given up your right to have an attorney present?

THE DEFENDANT: Yes.

Defendant presents one point on appeal. He contends the trial court committed plain error [4] "when it compelled [him] to proceed to trial without counsel." Although it is questionable that defendant's page-long narration of why the trial court's actions were erroneous complies with the requirements of brevity and conciseness of Rule 30.06(d), three issues are raised. Defendant claims he was denied effective assistance of counsel because of indigency, that he lacked sufficient funds with which to employ counsel. He claims that even if he were not indigent, he "had no opportunity to hire counsel after the court on the day of trial advised him that he must do so and that he would be at a disadvantage if he did not hire counsel." He further complains that he was not advised of the dangers of self-representation "in time for him to hire an attorney."

"The right of an accused to counsel has two aspects: the right to retain counsel and the right, in certain situations, to have counsel appointed." *State v. Wilson,* 816 S.W.2d 301, 304 (Mo.App.1991), citing *State v. Jones,* 466 S.W.2d 688 (Mo.1971). The first issue defendant sets forth in his point on appeal is directed to the right to have counsel appointed.

■ Defendant now complains that he was indigent and should have had counsel appointed to represent him; however, he did not pursue that issue with the trial court. Unless defendant was indigent, he was ineligible for public defender services. *State ex rel. Tanzey v. Richter,* 762 S.W.2d 857, 858 (Mo.App.1989).

The procedure to determine a person's eligibility for representation by a public defender is contained in § 600.086, RSMo 1986, of the enactment on public defenders. The relevant portions of § 600.086 are as follows:

1. A person shall be considered eligible for representation … when it appears from all the circumstances of the case including his ability to make bond, his income and the number of persons dependent on him for support that the person does not have the means at his disposal or available to him to obtain counsel in his behalf and is indigent as hereafter determined.

\*   \*   \*   \*   \*   \*

3. The determination of indigency of any person seeking the services of the state public defender system shall be made by the defender or anyone serving under him at any stage of the proceedings and shall be subject to appeal to the court before which the case is pending. Any such person claiming indigency shall file with the court an affidavit

---

4. Defendant preserved nothing for appellate review in that he filed no motion for new trial. Rule 29.11(d). This court's review is therefore limited to determining if there were plain errors committed by the trial court that resulted in manifest injustice or miscarriage of justice. Rule 29.12(b).

which shall contain the factual information required by the commission under rules which may be established by the commission in determining indigency.

\* \* \* \* \* \*

6. The burden shall lie on the accused or the defendant to convince the defender or the court of his eligibility to receive legal services, in any conference, hearing or question thereon.

Section 600.086 makes it clear that it is the initial responsibility of the public defender to determine eligibility under Chapter 600. *State ex rel. Shaw v. Provaznik,* 708 S.W.2d 337, 341 (Mo.App.1986). "The judiciary is to intervene only upon appeal of the public defender's adverse decision." *Id.*

*Luleff v. State,* 842 S.W.2d 895, 898 (Mo.App. 1992).

Here, as in *Luleff,* the public defender determined that defendant was not indigent and informed him that the office of public defender would not provide representation. Defendant does not contend, nor does the record on appeal reveal, that defendant contested the public defender's finding of nonindigency. He did not file the affidavit required by § 600.086.3, or otherwise suggest to the trial court that the determination was erroneous. Nevertheless, the trial court inquired of defendant and determined that he was gainfully employed; that he was not providing support for anyone legally dependent upon him. This court finds no plain error in the trial court's failure to appoint counsel to represent defendant. That part of defendant's point on appeal is denied.

■ The next issue defendant raises is his complaint that he "had no opportunity to hire counsel after the court on the day of trial advised him that he must do so and that he would be at a disadvantage if he did not hire counsel." He relies on *State v. Wilson, supra,* for the proposition that "[t]he trial court plainly erred in proceeding immediately to trial without giving [defendant] time to hire counsel." His reliance on *Wilson* is misplaced.

The defendant in *Wilson* originally employed private counsel who later withdrew. A public defender then entered his appearance. In February 1989, the public defender filed a motion to withdraw. The trial court did not rule on the public defender's request to withdraw until the morning of trial, July 25, 1989. During that time, the defendant in *Wilson* "was repeatedly advised by the public defender and by the trial court that he did not qualify for the services of the public defender and would have to hire his own lawyer." 816 S.W.2d at 304. On one occasion the trial was continued to enable him to hire counsel. However, on the morning of trial when the judge asked whether the defendant had been told by the public defender on numerous times that the public defender would not be representing him in the case, the defendant in *Wilson* responded, "The last time we talked he said he was probably going to have to represent me." *Id.* This court held that the defendant in *Wilson* waived his right to counsel, saying:

The right to have counsel of one's own choice can be expressly waived; it also can be waived by a defendant who fails to retain counsel within a reasonable time when he is financially able to do so. *[State v.] Yardley,* 637 S.W.2d [293] at 295–96 [(Mo.App.1982)]. Here, the defendant did not expressly articulate his desire to forego counsel, yet his actions (more accurately, his inaction) bespoke a waiver of his right to an attorney. His failure to retain an attorney after being afforded ample opportunity to retain one manifested a decision to represent himself, and the trial court properly found an implied waiver of his right to counsel due to his conduct. *Yardley,* 637 S.W.2d at 295–96.

*Id.* at 305.

However, in *Wilson,* although the court found that the defendant waived counsel, it concluded the waiver was not knowingly and intelligently made. The court pointed out that although the defendant was repeatedly urged to employ counsel and told that the public defender would not represent him, "the record does not disclose that the defendant was advised before the July 25 trial date that he would have to represent himself if he did not hire counsel." *Id.* at 307. In assessing whether the defendant's waiver of

counsel had been made knowingly and intelligently, the court observed:

> These deficiencies are all the more disturbing because (1) as of July 25, 1989, the public defender's motion to withdraw had not been acted upon; (2) the defendant's claim that he had been told by the public defender "the last time we talked" that "he was probably going to have to represent me" was never disputed or denied; (3) when asked if he understood that he was going to have to proceed on his own, the defendant responded, "not really"; and (4) after the defendant was advised that the trial would proceed, the trial court asked him if he understood that self-representation was going to be "an extreme hardship" and "an extreme disadvantage" to him, he answered, "No, not really."

*Id.*

This defendant was never represented by counsel. He acknowledged that he understood that since he did not qualify for representation by the public defender, it was his responsibility to hire counsel or proceed without counsel. He stated that he understood that going to trial without an attorney put him at "an extreme disadvantage" and further acknowledged the understanding that by not hiring an attorney, he voluntarily gave up his right to counsel. Additionally, the record discloses that defendant had been notified, almost four months before the trial date, that the case was *set for trial* on the date it was actually tried. He never asked for the trial to be continued.

Defendant actively participated in the trial.[5] Although he asked no questions on voir dire, when offered the opportunity to ask questions after the state had inquired,[6] defendant responded, "No, Your Honor. He's [the prosecuting attorney] went through everything."

The state presented two witnesses, defendant's children, one of whom was the victim

of the offense that was charged. The victim described the acts that constituted the charged offense. Her brother testified that he was present in the house where the offense occurred during times when defendant would take the victim into a bedroom and close the door. The brother testified that he did not hear voices while his father and sister were in the room and that his sister did not tell him what occurred during those occasions. At the close of the state's inquiry of the victim, the trial court told defendant, "Mr. Bilyeu, you may question the witness." Defendant replied, "No questions." At the close of the state's inquiry of the brother, the trial court said, "Mr. Bilyeu." Defendant replied, "No, ma'am."

A recess was taken following the state's evidence. During the recess the trial court advised defendant that he had a right not to take the stand and testify against himself. The judge told defendant that it was his decision whether to testify. He was also told that he was not required to make an opening statement. Defendant was afforded the opportunity to ask additional questions. Thereafter, the trial resumed.

Upon returning to the courtroom and reconvening the trial, defendant told the judge that he did not wish to make an opening statement. He stated that he wished to testify. Defendant was told to state his name. He was then permitted to testify in the narrative. His testimony included denials of some of the victim's testimony and admissions of some of the acts she had described. He testified of marital problems at the time of the charged offense, apparently suggesting them as mitigating circumstances. Defendant called no other witness. Defendant made a closing argument.

The state's opening segment of its closing argument consists of five pages in the transcript. The defendant's closing argument covers three pages. The state's rebuttal ar-

---

5. Defendant executed a written waiver of counsel form that the court provided for his use. On appeal his counsel points to the fact that the printed form was designed for use in a guilty plea proceeding before an associate circuit judge. The trial judge went to considerable lengths to advise the defendant, prior to commencement of trial, about the contents of the form. The expla-

nation included the fact that the printed form was designed for another type of proceeding and that parts of it were not applicable to defendant.

6. The state's voir dire covers 23 pages of the trial transcript.

gument consisted of one paragraph that covers approximately one-fourth of one page in the transcript. Defendant's claim that the trial court committed plain error by proceeding to trial without giving defendant additional time in which to employ counsel is denied.

■ The final issue defendant raises in his point on appeal challenges the sufficiency of the trial court's warning "of the dangers of self-representation." Specifically, defendant complains the trial court did not advise him "(a) that self-representation [was] almost always unwise and that he [might] conduct a defense ultimately to his own detriment; (b) that he [would] receive no special treatment by the court and [would be required to] follow the technical rules of substantive law and criminal procedure on evidence; and (c) that the state [would] be represented by an experienced, professional counsel." Defendant cites *State v. Quinn*, 565 S.W.2d 665, 676–77 (Mo.App.1978).

■ There is no specific litany [7] prescribed for apprising a pro se defendant of the difficulty and the dangers that are inherent to self-representation. *State v. Wilson*, 816 S.W.2d at 307. What is required is for a defendant to be apprised of the difficulties of self-representation in terms that are sufficient to enable him or her to choose a course to follow. *Id.* A trial court faced with the prospects of a pro se litigant, particularly a defendant in a criminal case who will be tried before a jury, has a difficult task. The respective rights of the parties must be carefully weighed and enforced. The state has a right to proceed to trial in a timely manner, as does the defendant. The defendant is entitled to a fair trial.

The part of *State v. Quinn, supra,* to which defendant calls this court's attention is an appendix to the opinion that outlines a procedure the eastern district suggested be followed when a trial court engages in a discussion with a defendant in a criminal case who is considering representing himself or herself. It is from this suggested outline that defendant draws his claim that the trial court's admonitions were inadequate because they did not parrot that litany. This court finds no plain error in the admonition the trial court provided in this case. Defendant's claim that the trial court's admonition was inadequate is denied.

A review of the entire transcript and legal file, together with all authorities relied on by the parties and this court's independent research, does not reveal plain error in this case. There is no showing of manifest injustice or miscarriage of justice. The judgment is affirmed.

SHRUM and MONTGOMERY, JJ., concur.

---

7. In addition to the narrative of dangers of self-representation that the trial judge provided in her admonishment to defendant prior to trial, the judge undertook with commendable patience and detail to explain the mechanics of a trial. Before starting the trial, the judge explained the process of selecting a jury; the use of an opening statement, including defendant's right to make an opening statement after that of the state or to reserve it until just before he would present evidence. The judge told defendant that the state would call its witnesses first and explained the procedure to be followed in making objections. Defendant was told the significance of the rulings on objections; what it meant when an objection was sustained and what it meant when an objection was overruled. He was told to avoid contact with the jurors and that after the state presented evidence, he would have the opportunity to call witnesses. Defendant was told, both before trial and after the state rested, that he could testify but he was not required to testify; that whether he testified would be his decision to make. The fact that the state could call rebuttal evidence was explained. Defendant was told that there would be an instruction conference after all the evidence was presented to be followed by closing arguments to the jury.