STATE of Missouri, Respondent,

v.

Stanley Nick EHNES, Appellant.

No. 20379.

Missouri Court of Appeals,
Southern District,
Division Two.

July 31, 1996.

Gary E. Brotherton, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, David R. Truman, Assistant Attorney General, Jefferson City, for respondent.

MONTGOMERY, Chief Judge.

On October 24, 1994, Stanley Nick Ehnes (Defendant) was charged with assault of a law enforcement officer in the second degree. § 565.082.1(1).[1] Defendant applied for and received representation from the local public defender. After Defendant's mother posted a $2,000 cash bond for him, the public defender withdrew, noting that Defendant was no longer qualified for her services. The court then released Defendant on his own recognizance and refunded his mother's cash. The court cautioned Defendant about the perils of representing himself at trial and recommended that he hire private counsel or reapply for the public defender's services. Defendant refused to reapply for the public defender's services and failed to retain legal representation. However, he steadfastly refused to waive his right to counsel.

When Defendant appeared without counsel on the appointed date, the trial proceeded with Defendant representing himself. The jury found Defendant guilty. On July 28, 1995, the trial court accepted the jury's recommendation and sentenced Defendant to seven years' imprisonment. This appeal followed.

Defendant does not challenge the sufficiency of the evidence. The issues raised do not require recitation of the facts adduced at trial.

In his first point on appeal Defendant claims the trial court violated his constitutional right to counsel, due process and a fair trial by forcing him to proceed *pro se* without (1) appointing the public defender pursuant to § 600.086, and (2) obtaining a written waiver pursuant to § 600.051.

■ Defendant correctly states that the Sixth and Fourteenth Amendments to the United States Constitution guarantee that a person must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment. *State v. Wilson*, 816 S.W.2d 301, 303 (Mo. App.1991). A defendant may, however, waive this right provided that such waiver is knowingly and intelligently made. *State v. Bethel*, 896 S.W.2d 497, 499 (Mo.App.1995). A detailed view of the record is necessary to establish whether Defendant waived his right to counsel.

On March 30, 1995, at a pretrial hearing on Defendant's bond, the following exchange took place:

THE COURT:[2] Mr. Ehnes, before I proceed any further on this, your trial date is May 25th and 26th. Judge Bernhardt Drumm has been assigned to the case to handle the actual trial of the case. You do not have an attorney representing you at this time. Is that correct?

MR. EHNES: That's correct.

THE COURT: And you have not had an attorney representing you at any stage of the proceedings up to this point; isn't that correct?

MR. EHNES: No. I had Christine Holiman.[3]

. . . .

THE COURT: All right. What I'm going to need to do, Mr. Ehnes, is to question you with regard to whether or not you are electing—choosing, in other words, to proceed with this case as your own attorney or whether you are going to request that counsel be appointed on your behalf or that you intend to hire an attorney. My question to you is do you intend to hire an attorney?

MR. EHNES: If I could find one that would defend me, I would.

THE COURT: Have you made any attempts to hire an attorney?

---

1. Statutory references are to RSMo 1994, unless otherwise indicated.

2. Although the Honorable Bernhardt C. Drumm Jr. presided over Defendant's trial as special judge, the Honorable Mary A. Dickerson presided at the two pretrial hearings involved in this appeal.

3. The record reveals that Ms. Holiman, the public defender originally assigned to this case, withdrew after Defendant's mother posted a $2,000 cash bond on his behalf, thereby disqualifying him for the services of her office. As noted, the court released Defendant on his own recognizance and ordered the $2,000 returned to his mother.

MR. EHNES: I've had two of them in the past, and I've been sold down the river both times.

THE COURT: All right. Do you intend to make any additional effort to contact an attorney to represent you?

MR. EHNES: I—If I could find one, I would, Your Honor, if I could find one that would represent me.

THE COURT: Do you believe that you have the funds to hire an attorney if you can find one that you believe will represent you interest?

MR. EHNES: No. I don't believe I've got the funds.

. . . .

THE COURT: Now, let me get back to counsel then. Ms. Holiman withdrew because you had a $2,000 cash bond posted, which then you did not qualify for the public defender. Is it your intent, Mr. Ehnes, to now re-apply for the public defender in this matter to have them represent you?

MR. EHNES: No. I already tried her out once, and it just didn't work out. I have no intent to.

THE COURT: Well, I have an obligation as the judge on this case to make sure that you understand that you have a right to be represented by an attorney for this trial; and if you cannot afford to hire an attorney on your own, you have a right [to] have the Court appoint counsel for you.

The court informed Defendant that he did not have the right to choose a particular public defender, but that in any event Ms. Holiman was no longer with the area public defender's office. Therefore, the court suggested that Defendant may want to consider making application again to the public defender's office. This exchange then took place:

[THE COURT:] The only reason I'm questioning you today is because your trial date is coming up in May and you're going to have—Your attorney is going to have some time to prepare for the case. If you are going to represent yourself, I have to make certain findings that you're waiving your right to an attorney and that you're agreeing that that's what you want to do is represent yourself. That's not what I'm hearing you say today.

MR. EHNES: I won't waive no rights, Your Honor.

THE COURT: All right. All right. What I need you—What I'm going to do then, Mr. Ehnes, is I'm going to set this up for another date to review the situation to see if you have either hired an attorney or talked with a public defender to see if they're going to represent you; and I've got to do that for purposes of following this case to the trial date to make sure that you are represented and your rights are protected. I mean, it's not a matter of me trying to take rights away from you. What I'm trying to do is make sure that you exercise the rights that you have available to you, and that is your right to have an attorney; but I cannot take the steps necessary for you to avail yourself of what we provide. You will have to go down to the Public Defender's Office and fill out the application and make the request if you want the public defender to represent you.

If you don't go down there and if you don't take any steps to get the public defender, then that tells me that you're not making an effort, that you have chosen not to have a public defender represent you in the matter. So you have to go down there, make an application, and make the effort to get one appointed on your behalf.

Do you intend to do that?

MR. EHNES: I may do that. I—

THE COURT: All right. Okay. If you don't, then your choices are that you'll either have to hire an attorney or represent yourself. So what I'm going to do is set it up for another date to find out whether you have an attorney representing you and what you're choosing to do on the matter. Is that clear?

MR. EHNES: That's clear.

. . . .

THE COURT: . . . I can't tell you how to do the lawsuit, Mr. Ehnes. I mean, you—If you choose to do this on your own,

you have to do it, and I can't tell you how that's done. I apologize to you. Those are the rules I'm under; and as judge, I can't violate those. And that's why I'm suggesting to you that you get an attorney to represent you to make sure you have all the rights you're entitled to and that you don't waive those without even knowing you're waiving them. You may give up some rights without even realizing you're giving them up.

MR. EHNES: I don't—I don't waive no rights....

The court held the next pretrial hearing on April 20, 1995. At this time the court and Defendant engaged in the following colloquy:

THE COURT: ... Today's date was set for Mr. Ehnes to appear to advise the Court whether or not he was going to have counsel representing him. Mr. Ehnes is present and is not represented by an attorney.

Mr. Ehnes, you have indicated that you do not intend to make application for the public defender until State Representative Vernon Thompson has completed an investigation which you have asked him to do with regard to these criminal cases pending. Is that an accurate statement?

DEFENDANT EHNES: That's accurate, yes.

THE COURT: All right. You furthermore advised me in March that it is not your choice to represent yourself, that you are not going to waive the right to have an attorney represent you; correct?

DEFENDANT EHNES: Repeat the question again.

THE COURT: You are not going to waive your right to have an attorney represent you?

DEFENDANT EHNES: That's correct.

THE COURT: It is not your choice to represent yourself?

DEFENDANT EHNES: I'm—I've been representing myself.

THE COURT: I understand that, but you had indicated to me in March that you would rather have an attorney represent you?

DEFENDANT EHNES: Yes, if they'll defend me, that would be fine.

THE COURT: And I had also advised you in March that if you were going to represent yourself and that was your choice, that I was going to go through with you a waiver of a right to counsel form for you to sign, at which point you said, "I'm not waiving my rights to anything, I'm not signing any document"?

DEFENDANT EHNES: That's right, I ain't waiving no rights.

THE COURT: And you are still refusing to sign any document waiving your right to an attorney; correct?

DEFENDANT EHNES: Yes, and I want all my other rights protected.

THE COURT: All right. You're also telling me at this time that you're refusing to apply for the public defender until this investigation is completed by Representative Thompson?

DEFENDANT EHNES: Yes.

THE COURT: What do you intend to do, Mr. Ehnes, on May 25 when this is set for trial if you show up for trial and Judge Drumm refuses to continue it and you do not have an attorney?

DEFENDANT EHNES: I haven't got that far yet, Your Honor.

THE COURT: Well, you're a month away. You need to be thinking about that now.

. . . .

THE COURT: ... I believe what's going to happen, Mr. Ehnes, is you're going to arrive here on May 25 and Judge Drumm is going to be ready for trial.... You're either going to have to do that with an attorney or without an attorney, and if you show up on the 25th without an attorney, based on your assertions that you refuse to apply for the public defender until this investigation is done and you refuse to waive counsel, you're going to end up here without an attorney and being forced to trial with no representation other than yourself.

. . . .

The Court is going to make a specific finding at this· time that you have refused to fill out an application for the public defender and that you've refused to execute a form saying that you're waiving your right to counsel. I don't know what you want. I can't get you to apply for an attorney and I can't get you to say you want to represent yourself. I don't know what you want. What are you asking for at this point?

DEFENDANT EHNES: I want to see what's going to take place before I even consider an attorney. I want to see what Representative Vernon Thompson is going to do.

The court then informed Defendant the range of punishment on the charge is 5 to 15 years in the Department of Corrections. Defendant confirmed that was his understanding as well. The court then informed Defendant that if he did not have an attorney present on the trial date that he would have to conduct voir dire, make an opening statement, cross-examine state witnesses, and present his own case. The court advised him that he would receive no help from that court concerning the rules of evidence. Defendant responded that he had no objections so long as "the orders to the jury is totally unbiased." The court further explained that "[a]s of now, the case is going on May 25, and it's going to proceed with or without an attorney on your part." Finally the court encouraged Defendant to reconsider making application for the public defender. This advice went unheeded, and Defendant appeared pro se on the trial date.

██ " 'The right of an accused to counsel has two aspects: the right to retain counsel and the right, in certain situations, to have counsel appointed.' " *State v. Bilyeu,* 867 S.W.2d 646, 648 (Mo.App.1993) (quoting *State v. Wilson,* 816 S.W.2d 301, 304 (Mo.App.1991)). The first issue Defendant raises is directed to the right to have counsel appointed. Defendant claims he was indigent and qualified for public defender services, and therefore the court erred by failing to appoint counsel pursuant to § 600.086. This statute mandates the procedure to determine a person's eligibility for representation by a public defender and is set forth marginally in pertinent part.[4] It is the initial responsibility of the public defender to determine eligibility under § 600.086.3. " 'The judiciary is to intervene only upon appeal of the public defender's adverse decision.' " *Bilyeu,* 867 S.W.2d at 649 (quoting *Luleff v. State,* 842 S.W.2d 895, 898 (Mo.App.1992)).

Defendant made no motion for the trial court to determine indigency. No authority exists for Defendant's proposition that the trial court had a duty to, *sua sponte,* determine that Defendant was eligible for representation by the public defender. Here the court released Defendant on his own recognizance in an attempt to remove the primary factor making him ineligible for such representation. The court then repeatedly encouraged Defendant to reapply for representation. He declined to do so until his state representative finished "investigating" conspiracy charges Defendant hoped to bring against the police officers involved in his case. We cannot hold that the trial court erred by failing to appoint a public defender.

██ Next Defendant contends that the waiver of his right to counsel was ineffective because it was not in writing. Defendant

---

**4.** 600.086.1. A person shall be considered eligible for representation ... when it appears from all the circumstances of the case including his ability to make bond, his income and the number of persons dependant on him for support that the person does not have the means at his disposal or available to him to obtain counsel in his behalf and is indigent as hereafter determined.

. . . .

3. The determination of indigency of any person seeking the services of the state public defender system shall be made by the defender or anyone serving under him at any stage of the proceedings. Upon motion by either party, the court in which the case is pending shall have authority to determine whether the services of the public defender may be utilized by the defendant.... Any such person claiming indigency shall file with the court an affidavit which shall contain the factual information required by the commission under rules which may be established by the commission in determining indigency.

. . . .

6. The burden shall lie on the accused or the defendant to convince the defender or the court of his eligibility to receive legal services, in any conference, hearing or question thereon.

claims a trial court may only allow an accused to waive counsel after the court has determined that the decision to waive counsel is knowing and intelligent and "the waiver is signed before and witnessed by the judge or clerk of the court" pursuant to § 600.051.1. According to Defendant, failure to sign a written waiver means mandatory reversal under any circumstances. While it is true that § 600.051 requires a written waiver in cases of an express waiver of counsel, Defendant refused to make an express waiver. Therefore the cases Defendant cites, such as *Peterson v. State,* 572 S.W.2d 475, 477 (Mo. banc 1978), do not support his argument.

In this case the real issue concerns an implied waiver of counsel. Defendant failed to retain counsel while continuing to refuse to waive his right to counsel. In similar circumstances this court has determined that a defendant cannot purposely refuse to hire an attorney and then cry foul when his trial commences without one.

In *State v. Yardley,* 637 S.W.2d 293 (Mo. App.1982), the defendant claimed his conviction could not be upheld because he never signed a written waiver of counsel in accordance with § 600.051. This court rejected his claim holding:

> In this case the appellant did not expressly waive counsel. In fact, he said he wanted counsel but refused to employ a lawyer. If it is to be said that the appellant waived counsel, it is a waiver implied by his actions. A fair construction of § 600.051 is that it applies only to express waivers. To construe that section otherwise would create a vehicle by which a procedurally wise defendant could frustrate the administration of justice.... [T]his court holds that § 600.051 does not apply to the action of a defendant in refusing to hire a lawyer.

*Id.* at 295–96 (footnote omitted). Similarly, in *Wilson,* this court found that a defendant's failure to retain an attorney after being afforded ample opportunity to do so manifested a decision to represent himself; therefore, the trial court properly found an implied waiver through the defendant's conduct. The *Wilson* court noted:

> We emphasize that an accused should never be permitted to play a " 'cat and mouse' game with the court ... or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel." *United States v. McMann,* 386 F.2d 611, 618–19 (2nd Cir.1967), *cert. denied,* 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1153 (1968). Conscious attempts by a defendant to manipulate or intentionally delay the proceedings by refusing to hire private counsel should not be tolerated because such tactics imply "a greater understanding of the proceedings and an understanding of the risks and complexities of a criminal trial." *Fitzpatrick v. Wainwright,* 800 F.2d 1057, 1067 (11th Cir.1986).

816 S.W.2d at 308. In this case Defendant clearly stated that he would not waive his rights, yet he made no attempt to protect them by hiring private counsel or applying for a public defender. The court held pretrial hearings to determine if Defendant had retained counsel, noting that it wanted to ensure the protection of his rights. Furthermore, the court repeatedly warned Defendant that if he showed up at trial without an attorney, he would have to proceed *pro se.* Defendant manifested his intent to represent himself through his inaction. Section 600.051 does not apply to Defendant's implied waiver of counsel. Therefore, a written waiver was not required.

Although a written waiver of counsel was not mandated by § 600.051, it was still necessary for the trial court to establish that the waiver was knowingly and intelligently made. *See Bethel,* 896 S.W.2d at 500. "A defendant in a criminal case who is faced with the possibility of incarceration and who declines counsel, appointed or otherwise, should be admonished of the perils of self-representation." *Id.* Although there is no specific litany prescribed to assure a defendant is warned of the dangers of self-representation so that he may intelligently waive the right to counsel, it is essential that a *pro se* defendant be advised of these difficulties while he still has a choice in the matter. *Id.*

In this case the trial court repeatedly urged Defendant to seek counsel. The court warned Defendant that he would have to represent himself if he did not retain counsel. He knew the consequences of arriving at trial without an attorney. The court warned Defendant that without an attorney "[y]ou may give up some rights without even realizing you're giving them up." The court questioned Defendant about whether he understood he could be incarcerated for 5 to 15 years if found guilty of the crime charged. Defendant stated that he understood the possible range of punishment. The court then advised Defendant that he would have to conduct his own voir dire, opening statement, cross-examination, and direct examination. The court noted that he would receive no help from the court in following the rules of evidence. Defendant said he had no objections to this as long as the court was unbiased in its instructions to the jury.

In *Bilyeu*, this court found no plain error in the admonitions given Defendant as to the dangers of self-representation. 867 S.W.2d at 651. Compared to the admonitions given the defendant in *Bilyeu*, the Defendant here was even more fully advised of the perils of self-representation. Furthermore, he was advised well in advance of trial when he still had a choice in the matter.

There is ample evidence showing that Defendant's waiver of counsel was knowingly and intelligently made. Accordingly, Defendant's first point is denied.

Each of Defendant's remaining points contain a request for plain error review under Rule 30.20 which provides that this Court, in our discretion, may consider plain error affecting substantial rights when we find that manifest injustice or miscarriage of justice has resulted therefrom. As to the issues raised in these points, Defendant concedes that he made no trial objections and failed to include the claims of error in his motion for new trial. Failure to do so preserves nothing for appellate review. *State v. Tammons*, 522 S.W.2d 648, 651 (Mo.App. 1975).

"The plain error rule should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review." *State v. McMillin*, 783 S.W.2d 82, 98 (Mo.banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990) (citing *State v. Valentine*, 646 S.W.2d 729, 731 (Mo.1983)). Plain error relief "is granted only when the alleged error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected." *State v. Hadley*, 815 S.W.2d 422, 423 (Mo.banc 1991).

Defendant claims the trial court plainly erred and abused its discretion in failing, *sua sponte*, to admonish the prosecutor (Point II) not to detail the facts of the State's case during his voir dire examination; (Point III) for "improper argument" during his opening statement; (Point IV) for his repetitive and argumentative cross-examination of Defendant; and (Point V) for his improper closing and rebuttal arguments which personalized his argument and shifted the burden of proof to Defendant.

We have carefully reviewed the transcript and Defendant's arguments relative to each point. In doing so, we have been mindful of the following rules of appellate review.

An appellate court should interfere with the trial court's control of voir dire only when the record establishes a manifest abuse of discretion and a real probability of injury to the complaining party. *State v. Allen*, 829 S.W.2d 524, 526 (Mo.App.1992) (Point II). The trial court has broad discretion in controlling the scope of opening statement. *State v. Davis*, 860 S.W.2d 369, 375 (Mo.App.1993) (Point III). The extent of cross-examination of an accused rests within the discretion of the trial court, and an appellate court will not interfere unless that discretion is clearly abused. *State v. Sielfleisch*, 884 S.W.2d 422, 429 (Mo.App.1994) (Point IV). Trial courts have wide discretion in establishing the scope of permissible closing argument. *State v. Sumlin*, 915 S.W.2d 366, 370 (Mo.App.1996). "[P]lain error will seldom be found in unobjected closing argument. A holding that would require the judge to interrupt counsel presents myriad problems." *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992) (Point V).

Our review of the record leads us to the conclusion that no manifest injustice or miscarriage of justice has resulted from any of Defendant's complaints. Even if Defendant had properly preserved his allegations of error, it is doubtful that an appellate court could have convicted the trial court of a clear or manifest abuse of discretion resulting in any prejudicial error.

We also determine that further opinion detailing the prosecutor's opening statement and closing arguments, voir dire questions, and his cross-examination of Defendant would have no precedential value. Accordingly, Points II through V are denied pursuant to Rule 30.25(b).

The judgment of conviction is affirmed.

CROW, P.J., and PARRISH, J., concur.

