

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | WD81737 |
| v. | ) | |
| | ) | |
| TIMOTHY KEITH NDON, | ) | FILED: August 27, 2019 |
| Appellant. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF RANDOLPH COUNTY
### THE HONORABLE RALPH H. JAYNES, JUDGE

### BEFORE DIVISION TWO: LISA WHITE HARDWICK, PRESIDING JUDGE,
### THOMAS H. NEWTON AND MARK D. PFEIFFER, JUDGES

Timothy Ndon appeals from his convictions for operating a motor vehicle without a valid license and resisting arrest. He contends the circuit court erred in allowing him to represent himself without making an adequate determination on the record that his waiver of counsel was voluntary, unequivocal, knowing, and intelligent and without obtaining a statutorily-required written waiver of counsel. For reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

On December 22, 2016, a highway patrol officer stopped Ndon for not dimming his headlights for oncoming traffic. Ndon, who had two prior convictions for driving a motor vehicle without a license, did not produce any identification despite six requests from the officer to do so. Ndon was physically and verbally uncooperative during the

stop.  The State subsequently charged him with driving a motor vehicle without a license and resisting arrest.

Ndon was arraigned on February 22, 2017.  At the start of the arraignment, the court advised Ndon of the charges against him, the range of punishment on each charge, and his rights.  The court asked him how he would like to plead.  Ndon responded by arguing that he was not required to have a driver's license under the Constitution and various United States Supreme Court decisions.  The court asked Ndon whether he had considered having an attorney help him advance his constitutional claims.  Ndon made several non-responsive comments.

The court asked both parties if they were ready to proceed to trial.  After Ndon made a non-responsive comment and the State said that it was ready to proceed, the court advised Ndon that he was entitled to a jury trial but could waive that right.  The court asked him if he wanted to hire counsel, consult with counsel, or apply to have a public defender.  Ndon responded:

> Well again, against accepting those offers also as a condition of accepting all those offers upon proof of claim that those who, whether they live or die, they put their trust in those things that they understand as being right and good, those names become great.  And they'll all be indicted on day, some way or another.  So is it not more honorable to adopt those things that are right and good than to bow down for those who the weakness [sic]?

The court reiterated to Ndon that, if he wanted to take his case to the United States Supreme Court, "sometimes the best way to get it there is to have counsel help you get these motions filed, so that your rights are protected."  Following a discussion between the court and Ndon on various topics, the court again asked him if he was requesting counsel who could help him understand the case.  Ndon responded, "The

request I made is to understand the nature of the matter.  Because from my understanding, if there's no injured party, there is no claim.  Sheers v. Culler."  The court said, "So there being no request for counsel or court-appointed counsel, the Court sees that this gentleman is representing himself for the time being."

Ndon and the court then discussed the State's plea offer and his grievances against the highway patrol troopers who arrested him.  The court told Ndon that it was finding that he was pleading not guilty, and the court advised him that he would have the right to plead guilty later if he wanted to or to have a jury or bench trial.  The court further advised Ndon that, while he could represent himself, it "gets kind of complicated when you have a jury trial when you're representing yourself, just because there's a lot of formality to it."  Ndon responded by stating what he believed were his defenses to the charges.

Ndon continued to espouse his purported defenses as the court attempted to discern whether he wanted to accept the State's guilty plea offer or go to trial.  At one point, Ndon stated that it was difficult to "assess certain matters, because there is no adequate law library, no dictionaries."  In response, the court raised the possibility of applying for public defender services:

> Well, let me ask you this then.  Do you think you'd qualify for the public defender, as far as money-wise?  You have to be indigent, they call that.  You can't have lots of property, or cash, or what not.  Because here's what I'm thinking, if you qualify for the public defender, we have you apply, they'll represent you.  They can get you copies of the laws that you want copies of.  They can assist you with this.
>
> At some point in time down the road, if you want to determine that you're no longer in need of their services, we'll let you get rid of them.  But they can at least help you with the leg work of understanding what this is.

3

Ndon did not directly address that suggestion and instead repeated his legal theories. At the close of the hearing, the court again told Ndon that he could apply for a public defender, and the court advised him that, if he did not understand any of the things the court was saying, to "feel free to consult an attorney, and if you can't afford one, the public defender can be appointed for you." Again, Ndon did not respond directly to the court's advice.

In July 2017, the court ordered Ndon to submit to a mental examination. Pursuant to the order, the report of the examination was to include opinions regarding whether Ndon had a mental disease or defect and, if so, whether he lacked the capacity to understand the proceedings against him or to assist in his defense.

Ndon next appeared in court on October 11, 2017. The court stated that it was waiting on the results of the mental examination. The court told Ndon that if he was found competent to stand trial, the court would need to get a waiver of counsel on the record or the court could appoint an attorney for him if he wished. Ndon responded by arguing that his right to a speedy trial had been violated.

Ndon's next court appearance was December 14, 2017. The court opened the hearing by telling Ndon that the court needed to know if he wanted to waive counsel or obtain court-appointed counsel. The court stated that it wanted to address the issue in open court. The court presented Ndon with a second waiver of counsel form, noting that a form had previously been sent to him at the jail but had not been read. Ndon's response was:

> Why do you keep speaking to me about trials, and waiver of counsel, and these matters, and why wasn't that done during the time that you had early that year? Why do you keep on denying to dismiss the matter, which was asked to several times? And you do what you like to

4

do, you do whatever it is you want to do.  You don't even abide by your own laws, like you're mighty, a deity, I presume by your actions.

Later in the hearing, the court again asked Ndon if he wanted to apply with the public defender, hire a private attorney, or waive counsel.  Ndon did not directly respond but instead questioned the propriety of the proceedings, including the prosecutor's behavior and the judge's neutrality.  After indicating that the court would be willing to consider an untimely motion for change of judge, the court told Ndon, "But I have to first determine whether you're waiving counsel, or requesting counsel.  Do you want to waive or request counsel, so that we can keep your case moving?"  Once again, Ndon did not directly respond to the court's question.  The court and Ndon then had the following exchange:

> THE COURT:  The mental evaluation says that you are fit to stand trial, that you're aware of your rights, and that they recommend that we can proceed to trial.  Now that I have the green light to have you a trial, I want to have your trial.  I want you to have counsel, if you want.  If you don't want it, that's fine.  What I'm going to do now – it's very important to me, and I hope it's important to you – is that this right to counsel is going to be considered waived.

> NDON:  No, you're not waiving anything--

> THE COURT:  Today, you've got a written waiver you can fill out.  We'll get him a public defender application.  I'm going to send you back to the jail cell with – just go ahead and give him the application.  You're going to have an application for public defender services, and you're going to have a waiver of counsel.

> One of them requires an affirmative act.  To employ a public defender, you have to affirmatively fill out a public defender application.  If you fail to fill out the application, you don't have to affirmatively fill out the waiver of counsel.  The Court will consider it a waiver of counsel, and will proceed to trial without counsel, unless you hire one or subsequently ask

5

for a public defender application. I can't keep you in jail indefinitely, and I do not want to. I want to conclude your case.

> NDON: Then why did you send a message by the sheriff, saying that you would keep one in jail indefinitely?

> THE COURT: I'll keep you here until I know that your rights have been protected. And by doing this today, your right to counsel has been sufficiently protected. Your right to trial has been protected, in that we now know that you are mentally fit to stand trial. So we've got those rights protected for you.

The court explained to Ndon that he also had the right to discovery and the right to a jury trial. The court advised Ndon that it would bring him back in approximately one month so that Ndon could tell the court how he wanted to proceed. Ndon responded:

> You've shown yourself trustworthy as a judge, you've shown yourself to be upholding of your oath, that you perform your duties rightfully and timely, upon proof of claim of those things. And also – and the grantee does come here as the grantor. I appoint you as the judiciary judge over the matter of the trust with the name. And now I also will demand that the matter be dismissed with prejudice.

The court denied Ndon's motion to dismiss and told him that the court would be setting the case for a jury trial when he next returned to court. The court further told him:

> And as I said before, just to make sure that it's clear, the request for a public defender application is being sent back with you to the jail. A waiver of rights that explains your rights to counsel is being sent back with you to jail. I don't require either one back. I just require you to understand you have the right to counsel, and that by not filling anything out, it's considered a waiver of counsel.

> You'll be going to trial, with or without counsel, and you'll be going to trial soon. I'll probably go ahead and pick a trial date, and I do want you to have all the discovery.

Ndon responded by saying, "Only for the record, I reserve all my authority and rights, waiving none."

Ndon's next court appearance was January 16, 2018. After Ndon raised complaints about the jail's law library, the court told him that it would grant a continuance because he was representing himself and needed to obtain sufficient law prior to trial. Ndon denied that he was representing himself, saying that he was appearing "*propria persona* with special appearance." The court again advised him that counsel could be appointed for him or he could hire private counsel. The court also reminded Ndon that it had handed him a waiver of counsel form and that, while he had not specifically waived counsel, he had never requested counsel either. He responded, "And for the record, one here appears propria persona, with special restricted appearance. Never changed." The court then advised Ndon:

> All right. Well, duly noted. It's your prerogative, but at some point in time, we have to have this case resolved. So if it's with counsel, I'd be more than happy to get an attorney onboard for you. Otherwise, if you're not requesting one and you don't want to hire one, then we're going to have to proceed with you without counsel. Even with your limited appearance, it's still going to have to go forward. So first things first. First of all, of you request counsel and get counsel, the copies of the law that you seek will be provided through that counsel. They will assist you with that. If you're not requesting counsel and are representing yourself, then I will work on seeing about this law library claim that you make, because you are entitled to the laws. But we can at least cover counsel status first? Would you like to have counsel appointed for you? Would you like to hire counsel, or would you like to not have an attorney?

Ndon responded to the court's questions by stating that public defenders have a conflict of interest because they are state employees. The court expressed its faith in the public defender system and again asked if Ndon would like to apply for a public

7

defender.  Ndon reiterated his belief that public defenders have a conflict of interest, so the court asked him if he would like to hire private counsel.  Ndon said, "Sure."  When the court asked him how much time he would need to come up with the money for private counsel, Ndon asked the court, "Are you going to forward the money to me?"  The court informed Ndon that it would be improper for the court to pay for his private counsel and that "[p]rivate counsel has to be hired with private monies from you."  After Ndon said, "Yeah, that sounds – that sounds good," the court again asked him how much time he would need to hire counsel.  Ndon responded, "That can be done with one's own time for certain matters.  The matter that the so-called county prosecutor's bringing forth, that has been dead since September 25."

The court explained that the delay in setting Ndon's case for trial had been for the purpose of figuring out whether he was going to proceed with or without an attorney.  Again, the court explained Ndon's options of applying for a public defender or hiring his own private counsel.  The court asked Ndon to indicate what he wanted to do.  Ndon would not directly answer but instead continued to question, on several grounds, the validity of the proceedings.  After the hearing, the court entered an order assigning the case to a new judge.

Ndon appeared before the new judge on February 20, 2018.  The court opened the hearing by noting that the sheriff had handed Ndon a waiver of counsel form.  Ndon told the court that he was appearing "*propria persona*" and not *pro se.*  That prompted this colloquy:

> THE COURT:  Okay.  Now, we've discussed this off the record. . . .
> I need to go over this and make sure – I think other judges that have had
> the case have done this, but I want to make sure just from our point of
> view, me and you and the prosecutor here, on the record, that you

understand your right, which I've given you and I'm sure – and Judge Hayes has given you and probably other judges, that you have a right to a lawyer. And what the sheriff has given you is what the – the law requests that a defendant – any defendant that wishes to waive his or her right to a lawyer, to sign this form. And I would like – it indicates what the statute requires that a judge advises a defendant. And you understand your rights to have a lawyer, is that right? I've explained that to you?

NDON: One here waives no rights.

THE COURT: I'm sorry?

NDON: One here waives no rights.

THE COURT: You do not wish to waive any rights?

NDON: Correct.

THE COURT: Okay, so now, we did this last Friday, and we're going to attempt to do this again. If you don't waive your right to a lawyer, that means – and last Friday, the sheriff gave you an application for the public defender. And I told you when we [were] listening to that recording this morning that I'd seen the public defender here and indicated that if you wanted a lawyer, I would request that the public defender interview you and see if you qualify. So the public defender is – is here in the courtroom. You did not show me that you filled out the application, but I want to know if you want the public defender.

NDON: One here is here propria persona, as a living beneficiary and cestui qui of the trust with the name Timothy Keith Ndon. That's only for the record.

THE COURT: So you have to help me out here, okay? How am I supposed to receive that communication, that you want the public defender or you don't want the public defender? Help me.

NDON: One is here propria persona, as a living beneficiary and the cestui que of the trust with the name Timothy Keith Ndon.

9

The court advised Ndon that it would consider his failure to sign the waiver of counsel form to be a waiver of counsel. The court then "strongly" suggested, several times, that Ndon have a lawyer represent him "to fully engage in the complexities of a jury trial." The court further told him, "This is nothing that we see on TV all the time. I'm here to protect your rights."

Finally, Ndon agreed to talk with a public defender who was present in the courtroom. After that conversation, the public defender informed the court that he was declining to enter the case because he could not ethically present the defense that Ndon wished to present, as doing so would put his license at risk. The public defender advised the court that the case could be sent to a conflict attorney but that Ndon would first have to fill out an application, which he had not done.

The court addressed Ndon:

> Sir, you know, I want you to understand where that puts the Court at this point. I've offered you the public defender. You all visited about what you needed to visit about. He indicates you – he hasn't received an application, which I gave, again, to you in open court last Friday. And I take it that these rights, which – which ha[ve] been gone over, you're charged with operating a motor vehicle without a valid license, a class D felony; also, on Count II, with resisting and interfering with an arrest, another class D felony. It's up to four years in [the] Department of Corrections or up to a year in the county jail and/or a fine up to $5,000. That's on each count.
>
> So I want to advise you a sentence that you're subjected to . . . . You have been incarcerated for almost 12 months or so. You have a right to have a lawyer represent you. You have a right to have that lawyer to represent you in a trial, to cross-examine witnesses, to do anything that you think would be proper to make your defense. You have a right to make – as I told you the other day, if you have a trial, you could take the witness stand or not take the witness stand. If you didn't take the witness stand, nobody could make a statement that you didn't, because you are

10

presumed to be innocent. The State must prove your guilt beyond a reasonable doubt, and the Court would protect that.

Following an extensive discussion about the State's plea offer, the court advised Ndon that the case was set for a jury trial and informed him of the possible consequences of a guilty plea and of a jury trial. The court again told Ndon that it "strongly recommend[ed]" that he not proceed to trial without a lawyer, noting, "I've been down this road . . . many a day, and it's not good when people don't have a lawyer, but that's your right." After Ndon responded with a rambling discourse of his complaints about the proceedings up to that point, the court made a finding that Ndon had knowingly, voluntarily, and willingly given up his right to have a lawyer represent him.

Ndon next appeared on March 2, 2018, for a pretrial hearing. During the hearing, the court received certified copies of Ndon's two prior convictions for driving without a license, heard arguments from Ndon as to why the court should not consider them, and made a finding that he had two prior convictions for driving a motor vehicle without a license, which elevated the offense to a class E felony. When the court then asked Ndon if he knew anything about a jury trial, he replied, "Yep." Despite Ndon's response, the court explained the entire process of a jury trial to him and answered all questions he posed about that process. The court made it clear that the process was the same regardless of whether the defendant was represented by a lawyer or appearing *pro se* and that Ndon had to comply with all of the rules with which a lawyer would have to comply. The court also discussed the State's plea offer with Ndon. At no time did Ndon indicate that he wanted the advice of counsel.

A jury trial was held on March 7, 2018. Ndon appeared *pro se*. Ndon asked a couple of questions of the venire panel during *voir dire*; responded to the State's

11

challenges for cause; and made several challenges for cause, some of which were granted. Additionally, he made an opening statement; cross-examined the State's witnesses; offered seven exhibits, three of which were admitted; and made a closing argument. The jury found Ndon guilty of driving without a valid license and recommended a sentence of two years in prison, which the court imposed. The jury also found Ndon guilty of resisting arrest and recommended a sentence of two years in prison. The court suspended imposition of that sentence and placed him on five years' probation. Ndon appeals.[1]

## STANDARD OF REVIEW

Ndon asserts that, in allowing him to represent himself, the circuit court violated both his constitutional rights and a statute. He did not raise either of these claims at trial. "Constitutional claims must be made at the first opportunity to be preserved for review." *State v. Davis*, 507 S.W.3d 41, 44 (Mo. App. 2016). However, "a self-represented defendant's failure to object at trial regarding the knowing, voluntary, and intelligent nature of his waiver of the right to counsel is generally excused." *State v. Kunonga*, 490 S.W.3d 746, 759 (Mo. App. 2016) (citing *State v. Murray*, 469 S.W.3d 921, 925 (Mo. App. 2015)). This is because a *pro se* defendant "cannot be expected to object that a waiver-of-counsel was not voluntary because of alleged inadequacies in an on-the-record inquiry designed to determine whether [the] waiver is knowing, voluntary,

---

[1] Although Ndon's brief indicates that he is appealing both of his convictions, he cannot appeal his resisting arrest conviction because the court entered a suspended imposition of sentence on that count. "A conviction resulting in a suspended imposition of sentence . . . is not a final appealable judgment." *State v. Johnson*, 456 S.W.3d 497, 500 n.3 (Mo. App. 2015).

12

and intelligent." *Id.* (citing *Murray*, 469 S.W.3d at 925). Thus, we review a claim that the waiver of counsel hearing was inadequate *de novo. Davis*, 507 S.W.3d at 44.

This rule does not apply, however, to Ndon's claim that the court violated Section 600.051, RSMo 2016,[2] by not obtaining a written waiver of counsel. There is "no rational basis for excusing" a *pro se* defendant's failure to raise the court's alleged non-compliance with Section 600.051. *Kunonga*, 490 S.W.3d at 759. Such a claim is unpreserved and will be reviewed only for plain error. *Davis*, 507 S.W.3d at 44. To constitute plain error, the alleged error must be "'evident, obvious and clear,'" and it must "'facially establish[ ] substantial grounds for believing a manifest injustice or miscarriage of justice occurred.'" *State v. Johnson*, 524 S.W.3d 505, 513, 518 (Mo. banc 2017) (citations omitted). Plain error relief is granted "'only when the alleged error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected.'" *State v. Perry,* 548 S.W.3d 292, 300-01 (Mo. banc 2018) (citation omitted).

ANALYSIS

In his sole point on appeal, Ndon contends the circuit court violated his constitutional rights to counsel and to due process by allowing him to represent himself without first making an adequate determination on the record that his purported waiver of counsel was voluntary, unequivocal, knowing, and intelligent. He further asserts the court plainly erred in failing to obtain a written waiver of counsel pursuant to Section 600.051.

---

[2] All statutory references are to the Revised Statutes of Missouri 2016.

"The Sixth Amendment right to counsel 'implicitly embodies a correlative right to dispense with a lawyer's help.'" *Murray*, 469 S.W.3d at 926 (quoting *Faretta v. California*, 422 U.S. 806, 814 (1975)). "This right applies to the states through the Due Process Clause of the Fourteenth Amendment." *Id*. The circuit court "has no discretion to force an attorney upon a defendant who validly waives the right to counsel." *Id*. Nevertheless, "[f]or a waiver of counsel to be effective, due process requires that the waiver be made knowingly and intelligently." *State v. Hunter*, 840 S.W.2d 850, 857 (Mo. banc 1992) (citing *Faretta*, 422 U.S. at 835).

Missouri has two requirements that must be satisfied before the circuit court can conclude that a defendant has effectively waived the right to counsel. *Kunonga*, 490 S.W.3d at 764. First, "[t]here must be a 'thorough [*Faretta*] evidentiary hearing' that establishes that 'the defendant understands exactly what rights and privileges he is waiving, as well as the dangers associated with waiving constitutional rights.'" *Id*. (quoting *State v. Black*, 223 S.W.3d 149, 155-56 (Mo. banc 2007)). Second, the defendant must be given the opportunity to sign the written waiver of counsel form mandated by Section 600.051. *Id*.

Looking first at the adequacy of the waiver of counsel hearing, we note that there is "no specific litany required for a *Faretta* hearing." *Kunonga*, 490 S.W.3d at 763. Instead, "[w]hether a *Faretta* hearing establishes that a waiver of counsel is knowingly and intelligently made depends on 'the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.'" *Id*. at 763-64 (quoting *Hunter*, 840 S.W.2d at 858). The "[d]efendant's knowledge of all

14

relevant facts need not appear in the trial record to support a finding that the waiver of counsel was proper." *Hunter*, 840 S.W.2d at 858.

In this case, Ndon appeared before two different judges on five occasions between February 22, 2017 and February 20, 2018. On each of those occasions, the court informed Ndon that he was entitled to counsel and asked him many times whether he wanted the assistance of counsel. He was also advised of the charges against him and the range of punishment. The court explained to Ndon how counsel could assist him in cross-examining witnesses and presenting a defense, explained his right to testify or not testify, and explained the State's burden of proof. Ndon was advised numerous times that he could apply for the services of the public defender and was even given application forms. Ndon was repeatedly warned that he would be considered to have waived counsel if he did not hire an attorney or apply for a public defender. The court strongly recommended to Ndon that he not go to trial without counsel. The court cautioned Ndon that a jury trial was complicated and that, in the court's experience, "it's not good when people don't have a lawyer." Ndon never responded directly to the court's questions concerning his desire to have counsel; instead, he discussed other matters, including his purported defenses and grievances.

Ndon argues that his "incoherent, illogical, and mostly irrelevant" statements during the hearings showed that he was "incapable of adequately representing himself at trial." He asserts that the court "made no inquiry whatsoever as to [his] ability or competency to represent himself." The record indicates otherwise. In July 2017, the court ordered Ndon to undergo a mental examination to determine whether he had a mental disease or defect and, if so, whether he lacked the capacity to understand the

proceedings against him or to assist in his defense. The circuit court's docket sheet shows that a report from the mental examination was filed with the court in October 2017. Ndon chose not to include this report in the record on appeal. "Matters omitted from the record on appeal will not be presumed to be favorable to the appellant." *State v. White*, 556 S.W.3d 110, 113 n.2 (Mo. App. 2018). Furthermore, the court's statements to Ndon that "[t]he mental evaluation says that you are fit to stand trial, that you're aware of your rights, and that they recommend that we can proceed to trial," indicate that the report supported the court's decision to allow Ndon to proceed *pro se*.

Ndon's conduct during the hearings was very similar to that of the defendant in *Davis*, 507 S.W.3d at 44-45. Like Ndon, Davis refused to respond directly to the court's questions concerning assistance of counsel and, instead, repeatedly told the court that "nothing could be done until the court proved its 'status' and presented a 'delegation of authority.'" *Davis*, 507 S.W.3d at 45. In holding that Davis's waiver of counsel hearing was sufficient to support the determination that his waiver was knowing and intelligent, the court found that Davis's "lack of cooperation and repeated refusal to acknowledge and answer pertinent questions of the waiver hearing process made it clear that any additional inquiry would be redundant and futile." *Id.*

We find that the court's *Faretta* inquiry in this case was thorough and that any additional inquiry would have been redundant and futile in light of Ndon's nonresponsive statements throughout each of the five hearings. The record contains ample evidence that Ndon's waiver of his right to counsel was voluntary, unequivocal, knowing, and intelligent.

Having found that the first requirement for waiver of counsel was met, we turn now to the second requirement:  a written waiver of counsel.  Section 600.051.1 outlines the required contents of this form, which is to be signed before and witnessed by the judge or clerk of the court and read by or to the defendant before signing:

(1) That the defendant has been charged with the offense of _____ (nature of charge must be inserted before signing);

(2) That the defendant has a right to a trial on the charge and further that the defendant has a right to a trial by a jury;

(3) That the maximum possible sentence on the charge is _____ imprisonment in jail and a fine in the amount of _____ dollars or by both imprisonment and fine.  That the minimum possible sentence is _____ imprisonment in jail or by a fine in the amount of _____ dollars or by both such confinement and fine;

(4) That the defendant is aware that any recommendations by a prosecuting attorney or other prosecuting official are not binding on the judge and that any such recommendations may or may not be accepted by judge;

(5) That if defendant pleads guilty or is found guilty of the charge, the judge is most likely to impose a sentence of confinement;

(6) That, if indigent, and unable to employ an attorney, the defendant has a right to request the judge to appoint counsel to assist the defendant in his defense against the charge.

The written waiver required by this section provides "'objective assurance that the defendant's waiver is knowing and voluntary.'"  *Davis*, 507 S.W.3d at 45 (quoting *May v. State*, 718 S.W.2d 495, 497 (Mo. banc 1986)).

There are exceptions, however, to the written waiver of counsel requirement. One of these exceptions "is when the defendant is presented with a waiver form but refuses to sign it."  *Id.*  The reason for this exception is "to prevent 'gamesmanship

17

which might seriously interfere with trial proceedings.'" *Davis*, 507 S.W.3d at 45 (quoting *May*, 718 S.W.2d at 496). Where the defendant refuses to waive his right to counsel but refuses to retain counsel, the circuit court can properly find that such conduct constitutes an implied waiver of counsel. *State v. Ehnes*, 930 S.W.2d 441, 447 (Mo. App. 1996). Section 600.051 does not apply to implied waivers of counsel. *Id.*

Here, the court presented Ndon with a written waiver of counsel form several times and advised him of its contents. Each time, he refused to sign the form while continuing to refuse to apply for or to retain counsel. Ndon impliedly waived his right to counsel through his conduct; therefore, Section 600.051's requirement of a written waiver of counsel did not apply. *Id.* The circuit court did not err, plainly or otherwise, in failing to obtain a written waiver of counsel from Ndon. Point denied.

## CONCLUSION

The judgment is affirmed.

_____
**LISA WHITE HARDWICK, JUDGE**

ALL CONCUR.