STATE of Missouri, Plaintiff–
Respondent,

v.

Lance WILSON, Defendant–Appellant.

Lance WILSON, Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

Nos. 16884, 17371.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 3, 1991.

**302**

Mary K. Anderson, Columbia, for defendant-appellant and movant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent and respondent-respondent.

SHRUM, Presiding Judge.

The defendant Lance Wilson was convicted by a jury of stealing in violation of § 570.030, RSMo 1986. Because he was a prior offender, the trial court imposed the sentence, a seven-year term of imprisonment. He appeals from that judgment and sentence in case number 16884. In case number 17371, the defendant appeals from the judgment denying him the postconviction relief he sought pursuant to Rule 29.-15. This court consolidated the two appeals.

## DIRECT APPEAL ISSUE

The issue we must decide in No. 16884 is whether the trial court committed plain error affecting the defendant's substantial rights when it proceeded to trial although the defendant did not have an attorney. Specifically, in his single point relied on, the defendant contends (1) that the trial court failed to determine whether he had knowingly and intelligently waived his right to counsel, (2) the record clearly shows that he did not knowingly and intelligently waive his right to counsel, and (3) the record reveals he was unable to represent himself competently.

Because we have determined that there is merit to the defendant's single point, we reverse and remand for a new trial. By reason of our decision in No. 16684, there is no judgment to consider in No. 17371 and that appeal is dismissed.

## FACTS

On January 2, 1987, the defendant took a Dodge Ram Charger from the used car lot where he was employed without the permission of the truck's owner, Lance Cromer. The defendant and two other men, Harvey Hill and Donald Ivey, spent the evening riding around in the stolen vehicle. During that time, the defendant asked Hill to take the tags from the truck. Later, in the early morning hours of January 3, the defendant asked Hill to wreck the truck so he (the defendant) could collect the insurance proceeds. At yet a later time, the defendant admitted to Hill that the truck was stolen.

Following an investigation of the theft by officers, the defendant was arrested and charged. Both Hill and Ivey testified to the facts summarized above. Additional facts pertinent to the defendant's claim of error are recited later in this opinion.

## PRELIMINARY INQUIRY:

### FAILURE TO PRESERVE ERROR FOR REVIEW

■ The defendant did not file a new trial motion. Accordingly, his allegation of trial court error was not preserved for our review. Rule 29.11(d). He requests, however, that his point on appeal be reviewed under the plain error standard of Rule 29.-12(b) which states, "Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

It is difficult to discern whether plain error exists in a given situation. *State v. Smith*, 595 S.W.2d 764, 765 (Mo.App.1980). " '[P]lain error' is such a highly elusive term that it does not readily lend itself to being succinctly defined or isolated by the use of judicial platitudes." *Id.*

In evaluating ... plain error, special attention should be given to the nature of the error which has occurred. Some errors may be disregarded even though they constitute constitutional deprivations, provided that they "are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Chapman v. State of California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). On the other hand, "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error."

*Smith*, 595 S.W.2d at 766.

It was settled by *Gideon v. Wainwright*, 372 U.S. 335, 343–44, 83 S.Ct. 792, 796, 9 L.Ed.2d 799, 805, 93 A.L.R.2d 733, 742 (1963), that the states are obliged by the due process requirements of the 14th Amendment to the U.S. Constitution to assure that in all criminal prosecutions the accused shall have the assistance of counsel for his defense. "The Sixth and Fourteenth Amendments guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *State v. Edwards*, 592 S.W.2d 308, 310 (Mo.App.1979).

■ The Supreme Court, in *Chapman*, 386 U.S. at 21, 87 S.Ct. at 826, 17 L.Ed.2d at 709 n. 4, specifically mentioned the 6th amendment right to counsel as one of the constitutional rights so basic to a fair trial that its infraction can never be treated as harmless error. Any doubt about the application of harmless error analysis to invalid waivers of counsel appears to have been laid to rest in *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), as follows:

*Chapman* recognizes that the right to counsel is "so basic to a fair trial that [its] infraction can never be treated as harmless error." (Citation omitted.) And more recently, in *Satterwhite v. Texas*, 486 U.S. 249, 256, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988), we stated

that a pervasive denial of counsel casts such doubt on the fairness of the trial process, that it can never be considered harmless error.

*Penson,* 488 U.S. at 88, 109 S.Ct. at 354, 102 L.Ed.2d at 313–14. Based on *Chapman* and *Penson,* and from reading the record of the case before us, we conclude that we will review the defendant's allegation of trial court error under the plain error rule.[1]

## ANALYSIS AND DECISION

■■■■ The right of an accused to counsel has two aspects: the right to retain counsel and the right, in certain situations, to have counsel appointed. *State v. Jones,* 466 S.W.2d 688 (Mo.1971). However, the right to private counsel is limited by the state's right to proceed to trial after the accused has been afforded a fair opportunity to engage his own counsel and adequate time to prepare his defense; the right to counsel does not include the right to defeat or impede the orderly processes of the administration of justice. *State v. Crider,* 451 S.W.2d 825, 828 (Mo.1970); *State v. Wright,* 650 S.W.2d 714, 716 (Mo.App. 1983). A persistent and ongoing refusal by an accused to hire counsel after being repeatedly told that he did not qualify for appointed counsel can be the functional equivalent of an express waiver of counsel. *State v. Yardley,* 637 S.W.2d 293, 295–96 (Mo.App.1982).

Here, the defendant initially retained private counsel who later withdrew for reasons not revealed by the record. The public defender then entered his appearance but filed a motion to withdraw on February 15, 1989. The record is replete with evidence that, beginning in the fall of 1988 and continuing through April 1989, the defendant was repeatedly advised by the public defender and by the trial court that he did not qualify for the services of the pub-

lic defender and would have to hire his own lawyer. During a lengthy discussion in court in April 1989, it was explained to the defendant that his case was being continued at that time for the sole purpose of enabling him to retain counsel. Despite the many warnings and exhortations to the defendant that he would have to hire his own lawyer, he had not hired a lawyer as of July 25, 1989, his trial date. Additionally, the public defender's motion to withdraw had not been acted upon as of that date.

Upon opening of court on July 25, the following transpired:

THE COURT: Mr. Wilson, do you have an attorney representing you?

THE DEFENDANT: Dean Price [the public defender].

The court reminded the defendant that the public defender had filed a motion to withdraw because the defendant had posted bond in an amount that disqualified him for the public defender's assistance. The court then asked the defendant if he denied that the public defender "had told you numerous times that he would not be representing you on this matter"?

THE DEFENDANT: The last time we talked he said he was probably going to have to represent me.

Upon further questioning, the defendant admitted he had been advised repeatedly that he did not qualify for the public defender's services, but he asserted he "just didn't make the money" to hire his own lawyer. Then the following exchange occurred:

THE COURT: [I]f you do not have an attorney that you've hired to represent you, then you are going to have to proceed on your own. Do you understand that?

THE DEFENDANT: Not really.

---

1. We recognize that there is substantial evidence of the defendant's guilt in this case. That, however, *does not preclude our consideration of the issue raised.* Our supreme court has held that plain error may exist where the evidence of the defendant's guilt is overwhelming. *State v. Escoe,* 548 S.W.2d 568, 571 (Mo.banc 1977).

"Not the least merit of our constitutional system is that its safeguards extend to all—the least deserving as well as the most virtuous." *Hill v. State of Texas,* 316 U.S. 400, 62 S.Ct. 1159, 1162, 86 L.Ed. 1559 (1942), *quoted in State v. Clements,* 789 S.W.2d 101, 111 (Mo.App.1990).

At that point, the trial court gave the defendant time to speak with the public defender. After that conversation, the following transpired:

THE COURT: Mr. Wilson, have you had an opportunity now to talk with Mr. Price?

THE DEFENDANT: Long session or—

THE COURT: Just now.

THE DEFENDANT: Yeah.

Without further inquiry, advice, or comment to the defendant, the trial court sustained the public defender's motion to withdraw.

The prosecutor then questioned the public defender, and the court questioned the defendant. Inquiries to the public defender focused exclusively on the fact that the defendant had been advised repeatedly that he did not qualify for the public defender's services and would have to hire his own lawyer. The court's questions to the defendant concerned his knowledge that he did not qualify for the services of the public defender, his failed attempts to hire private counsel, and his ability to post bond. At the conclusion of its questioning of the defendant, the court stated:

THE COURT: ... Mr. Wilson, the Court finds that you have had sufficient time to contact an attorney on your own to hire one if that was your desire.

You were advised that you did not qualify for the public defender numerous times by this Court, by Division One, and by Mr. Price as public defender.

You have been out on bond. You have been employed. You have not hired an attorney, and the Court is finding that you have voluntarily chosen not to have an attorney present with you today, that you have not hired one, and therefore, you are in the situation where this case is set for trial, and you will go to trial representing yourself.

Now, let me give you some preliminary rules on this matter before I get the veniremen in here, and we begin with the trial.

The record is devoid of any evidence that the defendant was advised, before July 25, 1989, that he would have to go to trial without counsel if he did not hire a lawyer.

 The right to have counsel of one's own choice can be expressly waived; it also can be waived by a defendant who fails to retain counsel within a reasonable time when he is financially able to do so. *Yardley*, 637 S.W.2d at 295–96. Here, the defendant did not expressly articulate his desire to forego counsel, yet his actions (more accurately, his inaction) bespoke a waiver of his right to an attorney. His failure to retain an attorney after being afforded ample opportunity to retain one manifested a decision to represent himself, and the trial court properly found an implied waiver of his right to counsel due to his conduct. *Yardley*, 637 S.W.2d at 295–96.

 It is not enough, however, that the trial court correctly determined that the defendant had voluntarily chosen to have no attorney. The question remains whether the defendant, a non-indigent who said he wanted a lawyer but refused to employ one, was given such advice as is necessary to establish that he acted "knowingly and intelligently" within the meaning of *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1947). *Yardley*, 637 S.W.2d at 296.[2]

 A "knowing and intelligent" waiver is essential because a defendant who manages his own defense relinquishes many of the traditional benefits associated with the right to counsel. *Edwards*, 592 S.W.2d at 310. Accordingly, a trial court has a duty to determine initially whether a

---

**2.** An accused also has a constitutional right under the 6th amendment to represent himself. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The 14th amendment extends the 6th amendment right of self-representation to defendants charged in state courts. *State v. Gilmore*, 697 S.W.2d 172, 174 (Mo.banc 1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986); *Edwards*, 592 S.W.2d at 310. Exercise by an accused of that right to self-representation is conditioned on a knowing and intelligent waiver of the right to counsel. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938); *Gilmore*, 697 S.W.2d at 174.

knowing and intelligent waiver has been made. *Von Moltke*, 332 U.S. at 723, 68 S.Ct. at 323–24, 92 L.Ed. at 320–21. Because of the strong presumption against waiver of the constitutional right to counsel,[3] the judge, in discharging his duty, must investigate "as long and as thoroughly as the circumstances of the case before him demand." *Von Moltke*, 332 U.S. at 723–24, 68 S.Ct. at 323, 92 L.Ed. at 321; *Gilmore*, 697 S.W.2d at 174; *Edwards*, 592 S.W.2d 308.

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

*Von Moltke*, 332 U.S. at 724, 68 S.Ct. at 323, 92 L.Ed. at 321.

■ Although the "knowing and "intelligent" waiver standard usually is applied in the context of a voluntary and expressed relinquishment of the right to counsel, it is clear that the same criteria should be applied where, as here, the accused fails to retain an attorney in a timely manner. "A court is under no less obligation to ensure that waiver is knowing and intelligent when voluntariness is deduced from conduct than when it is asserted expressly." *U.S. v. Allen*, 895 F.2d 1577, 1579 (10th Cir.1990); *See also Yardley*, 637 S.W.2d at 296.

■ In this case, after the trial court ruled that the defendant would go to trial representing himself, the following occurred:

> PROSECUTING ATTORNEY: ... I ... call the Judge's attention to State versus Yardley in this particular section.

(Document handed to the Court)

THE COURT: Okay. Mr. Wilson, you understand that this is a criminal charge that's pending against you?

THE DEFENDANT: No.

THE COURT: You don't have any idea what you are here on today?

THE DEFENDANT: I know I was going to court.

THE COURT: But you don't have any idea what it's on?

THE DEFENDANT: Stealing.

THE COURT: All right. That's a criminal charge and you face criminal penalties if you are found guilty.

In any event, the punishment, if you should be found guilty, you can face incarceration in the Missouri Department of Corrections for a number of years. This is an extreme disadvantage for you representing yourself.

The court is finding that you've chosen that action on your own and the perils of it, but it is going to be an extreme hardship, and it is going to be an extreme disadvantage to you this morning.

Do you understand that?

THE DEFENDANT: No, not really.

THE COURT: What don't you understand Mr. Wilson?

THE DEFENDANT: The Court.

THE COURT: What about it?

THE DEFENDANT: I don't know, just the way they do you.

THE COURT: Well, all right. You may step down.

The above-quoted exchange concluded the trial court's inquiry into whether the defendant knew what he was doing and that his choice was made with his "eyes open" as required by *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582.

The record reveals that the trial judge exercised admirable patience in affording the defendant the opportunity to seek counsel or decide to represent himself. And while we can understand, and even sympa-

---

3. *Johnson*, 304 U.S. at 464–65, 58 S.Ct. at 1023, 82 L.Ed. at 1466–67, 146 A.L.R. at 361–62; *Glas-* *ser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 464–65, 86 L.Ed. 680, 699 (1942).

thize with, the frustration and exasperation of the trial court with a defendant who had been told repeatedly that he must hire counsel, we cannot fairly say that the record supports a conclusion that the defendant's waiver was knowingly and intelligently made.

The principal thrust of the trial court's inquiries pertained to the repeated admonitions given the defendant before July 25 that he did not qualify for the services of the public defender. As earlier noted, the record is clear that the trial court and public defender frequently urged the defendant to secure private counsel. However, the record does not disclose that the defendant was advised before the July 25 trial date that he would have to represent himself if he did not hire counsel. Nor does the record disclose that the trial court made the required inquiries or advised the defendant in detailed terms of the advantages and disadvantages of self-representation before ruling that the defendant had to go to trial representing himself.

These deficiencies are all the more disturbing because (1) as of July 25, 1989, the public defender's motion to withdraw had not been acted upon; (2) the defendant's claim that he had been told by the public defender "the last time we talked" that "he was probably going to have to represent me" was never disputed or denied; (3) when asked if he understood that he was going to have to proceed on his own, the defendant responded, "not really"; and (4) after the defendant was advised that the trial would proceed, the trial court asked him if he understood that self-representation was going to be "an extreme hardship" and "an extreme disadvantage" to him, he answered, "No, not really."

While no specific litany is required in every case, we believe it is essential that a record be made reflecting that a defendant was apprised of the difficulties of self-representation in terms sufficient to enable him to intelligently decide which course to follow. Even more essential is that a defendant be advised of the difficulties of proceeding pro se while he still has a choice in the matter and not, as here, after a trial court ruling that he must proceed pro se.

Finally, the complete lack of a defense by the defendant, although by no means dispositive, surely gives us pause. To illustrate, after ruling that the defendant was going to trial representing himself but before warning him of the disadvantages of self-representation, the trial court set out "preliminary rules" about the conduct of the trial:

THE COURT: ... [A]ny time that you have a statement to make to the Court, then I'm going to ask you to approach the bench before you say anything. I don't want you making any statements from the table. I want you to step forward.

The Prosecutor will also step forward, and we will have a conference here at the bench. Is that understood?

THE DEFENDANT: I guess.

THE COURT: All right. In addition, during the time that Mr. Hutson or Mr. Kays, on behalf of the State, is doing the questioning, you are not allowed to interrupt and start testifying or making any statements.

If you have an objection to make, then you can state "objection" and approach the bench, and the Court will rule on it at that time; but you cannot make statements during the time that the State is presenting their case.

. . . .

THE COURT: ... [I]t's my job to keep order in this courtroom, and I intend to do that even with you representing yourself.

So if I admonish you to do something, then you best do it or else you'll find yourself in a situation of being held in contempt of court. Do you understand that?

THE DEFENDANT: What is attempt of court?

THE COURT: Contempt, that means for violating a court order. If I order you to do something or tell you that you are going to do something and you turn around and do just the opposite, then I

could hold you in contempt for violating a court order.

Do you understand that?

THE DEFENDANT: I guess so.

The defendant was then given the previously-quoted warning about the "extreme disadvantage" and "extreme hardship" of self-representation. When asked if he understood, he answered, "No, not really," he did not understand the way the courts "do you."

Without further advice or inquiry, the proceedings continued with the state's seeking leave to amend the information to charge the defendant as a prior offender. Asked if he had read the amended information, the defendant answered, "I just skimmed over it." Asked if he could read, he replied, "Yeah. I can read some of the words." When the court offered to read the amended information to him, he declined, saying, "No, I'll get it." The defendant was not asked if he objected to the filing of the amended information nor was he asked if he objected to the certified copy of his prior conviction before it was received in evidence.

Once the trial commenced, the defendant's participation was virtually non-existent. Certainly he gave the trial court no reason to find him in contempt. During voir dire he asked no questions nor did he make any strikes for cause.[4] During the course of the trial, he spoke only when spoken to. He made no opening statement, no objections during the state's case, and conducted no cross-examination of the state's witnesses. He presented no evidence on his own behalf and did not testify. He made no closing argument. For all practical purposes, the trial was an ex parte, nonadversarial proceeding.

We emphasize that an accused should never be permitted to play a " 'cat and mouse' game with the court ... or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel." *United States v. McMann*, 386 F.2d 611, 618–19 (2nd Cir.1967), *cert. denied*, 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1153 (1968). Conscious attempts by a defendant to manipulate or intentionally delay the proceedings by refusing to hire private counsel should not be tolerated because such tactics imply "a greater understanding of the proceedings and an understanding of the risks and complexities of a criminal trial." *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1067 (11th Cir.1986).

What we glean from the record before us is not a ruse or stratagem on the part of the defendant to forego participation and then claim denial of his right of counsel. The record indicates a defendant wholly bewildered by the proceedings, a bewilderment wrought by the defendant's ignorance of (1) the fact that he would be forced to trial without counsel if he did not hire one, (2) the crucial role of counsel in a criminal trial, and (3) all aspects of technical legal knowledge.[5] By the time the trial court attempted to enlighten the defendant on these points, he no longer had an opportunity to hire a lawyer because the trial court had already determined that he had waived his right to counsel and that the trial was to proceed.

We conclude that the defendant's implied waiver of counsel was invalid because it was not made knowingly and intelligently. Thus we hold that the trial court committed

---

**4.** When jury panel member Carolyn Nelson was asked by the state on voir dire if she felt that the fact that the defendant was unrepresented would cause her to give the defendant's testimony different "credibility," she answered, "I'm not sure of the testimony. I'm just wondering if he knows really the right questions and what to bring forth, as well as you guys do.... I'm not sure I will ... know that he's bringing forth all the facts that should be brought forth." She was stricken from the panel for cause upon the trial court's own motion.

**5.** We recognize that an accused who waives counsel need not possess the legal acumen of a skilled attorney in order to satisfy the standards of *Faretta*. However, from the record in this case, we feel secure in our conclusion that the defendant's previous experience with the law failed to imbue him with any understanding of his case or how to try it.

plain error, within the meaning of Rule 29.12(b), in proceeding to trial.

The judgment is reversed and the cause remanded for a new trial.

### CASE NO. 17371

Because we have reversed the judgment in No. 16884, there is no judgment to consider in No. 17371. That appeal is dismissed.

FLANIGAN, C.J., and MONTGOMERY, J., concur.