STATE of Missouri, Respondent,

v.

James Robert KILBURN, Appellant.

No. 69877.

Missouri Court of Appeals,
Eastern District,
Divison One.

March 11, 1997.

Harold G. Johnson, Mitchell Johnson, Johnson & Johnson, St. Ann, for appellant.

Timothy A. Braun, Prosecuting Attorney, Tanya Muhm Williams, Assistant Prosecuting Attorney, St. Charles County, for respondent.

GARY M. GAERTNER, Judge.

Appellant, James Robert Kilburn ("defendant"), appeals the judgment of conviction

for driving while intoxicated, RSMo § 577.010,[1] entered by the Circuit Court of St. Charles County after a bench trial. Defendant asserts the trial court erred in sentencing him to imprisonment because he was not represented by counsel at trial and did not knowingly waive his right to representation by counsel. We reverse and remand.

 Criminal defendants are guaranteed the right to counsel, and absent a knowing and intelligent waiver of counsel, no defendant may be imprisoned unless represented by counsel at trial. *State ex rel. Snider v. Flynn,* 926 S.W.2d 891, 893 (Mo. App. E.D.1996). A defendant may impliedly waive his or her right to counsel if he or she is not indigent and refuses to hire a lawyer after being afforded ample opportunity to retain one. *Id.* at 894. However, even if the defendant is non-indigent, the defendant must still be admonished of the perils of self-representation. *Id.* The defendant should be given such advice on the record as is necessary to establish he or she is acting voluntarily, knowingly and intelligently in waiving counsel. *Id.* The state bears the burden of proving the defendant knowingly and intelligently waived the right to counsel. *Id.*

 A waiver is deemed knowing and intelligent if made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of punishment thereunder, any possible defenses and mitigating circumstances, and a broad understanding of the entire matter. *State v. Davis,* 934 S.W.2d 331, 334 (Mo.App. E.D. 1996). While there is no specific litany required for apprising a *pro se* defendant of the difficulty and dangers of self-representation, the defendant should be apprised in terms sufficient to enable an intelligent decision. *Id.* Further, it is essential that the defendant be advised of the difficulties of proceeding *pro se* while he or she still has a choice in the matter, and not after the court has ruled he or she must proceed *pro se*. *State v. Wilson,* 816 S.W.2d 301, 307 (Mo.App. S.D.1991). In other words, the defendant must be "advised of the difficulties of proceeding without counsel *while there is still time to choose whether or not this right should be waived." State v. Schnelle,* 924 S.W.2d 292, 297 (Mo.App. W.D. 1996) (emphasis in original). "... [T]he trial court should *make a record* demonstrating (1) that the defendant *timely* understood that he would have to represent himself at trial if he failed to hire counsel; and (2) that the defendant was adequately informed about the nature of the charges against him, the severity of the sentences he could receive, and the type of the defenses he could offer, *prior* to the time he waived counsel." *Id.* at 298 (emphasis in original).

Bearing the above principles in mind, we turn to the facts of this case. Defendant was arrested on February 26, 1995, for driving while intoxicated. Due to his status as a prior offender—defendant had pled guilty on February 23, 1993, to a previous charge of driving while intoxicated—defendant was charged on April 17, 1995, with a class A misdemeanor. *See* RSMo §§ 577.023.1(3), 577.023.2.

Defendant's first attorney, Irvin Dubinsky, entered an appearance on defendant's behalf in March of 1995, but filed a motion to withdraw the following month. Continuances were granted on June 5, 1995, and July 10, 1995. On August 21, 1995, the date set for trial, the motion to withdraw was granted. Also on that date, a second attorney, Harold Johnson, entered his appearance on defendant's behalf. Johnson requested a continuance, which was granted. Trial was reset for October 2, 1995.

On October 2, 1995, defendant and Johnson appeared and requested another continuance in order to obtain discovery from the prosecutor and to interview a potential witness. The trial court granted this continuance as well. Trial was reset for November 13, 1995.

On October 25, 1995, Johnson filed a motion to withdraw as defendant's counsel. On October 30, 1995, the trial court entered the following order: "For good cause shown, counsel's motion to withdraw as attorney for

---

1. All statutory references are to RSMo 1994.

defendant sustained. Causes [2] remain on trial docket on 11–13–95 at 1:30 p.m. Defendant ordered to appear at that time with new counsel, or a bench warrant to issue for defendant's arrest."

Trial was held as scheduled on November 13, 1995. Defendant appeared without counsel. The following colloquy took place at the outset of the trial:

THE COURT: Mr. Kilburn, you're here without an attorney, correct?

[DEFENDANT]: Correct.

THE COURT: Are you ready for trial?

[DEFENDANT]: No. No, ma'am.

* * *

THE COURT: Okay. And why don't you have an attorney, Mr. Kilburn?

[DEFENDANT]: Because I was laid off from my job and I didn't have the money.

* * *

THE COURT: Okay. You told me that you were not prepared for trial today, and that you wanted some more time to get another attorney. Is that not correct?

[DEFENDANT]: Yes, ma'am.... If I had thirty days—Or if I had two weeks I could be ready.

THE COURT: Okay.... It's now November the 13th, so it's been almost nine months since the date of occurrence for which these charges were filed.

The record reflects that you had an attorney, Irvin Dubinsky, who entered on your behalf on or about March the 3rd of '95. And later, Mr. Dubinsky filed a motion to withdraw.... He filed a motion on or about April 21st of '95, asking to withdraw as counsel of record, stating that Defendant has failed to cooperate ...

... And so, finally, the case was set for trial on August 21st. And on that date I granted Mr. Dubinsky's motion for leave to withdraw that he filed some four months earlier.

And on that date, also, Defendant appeared with a second counsel, Harold Johnson, who, even though the case was set for trial that day, August the 21st, Mr. Johnson requested a continuance so that he could defend Mr. Kilburn. Over the State's objection, I granted the continuance and reset the case for trial on October 2nd of '95, ....

On that date Mr. Johnson appeared. I believe that Defendant—You were present, Mr. Kilburn; were you not?

[DEFENDANT]: Yes.

* * *

THE COURT: Okay. So you heard me grant Mr. Johnson's second motion for continuance and reset the matter for trial today, November 13th, correct?

[DEFENDANT]: Yes, Your Honor.

THE COURT: Okay. Then on or about the 30th of October, Mr. Johnson filed a motion for leave to withdraw, basically indicating to the Court that there was a lack of cooperation and a lack of payment. And I granted that motion for leave to withdraw with the requirement that Mr. Johnson notify you that the case remained on the trial docket of 11–13 of '95, at 1:30 p.m., and that you were ordered to appear at that time with new counsel, if you wanted it; and that if you failed to appear, a bench warrant would be issued for your arrest.

And you are here today, so, of course, no warrant will go out. But you indicated to me that you moved and you didn't get Mr. Johnson's letter until last week or something? ...

[DEFENDANT]: Correct. Correct.

THE COURT: Okay. But I questioned you, and you indicated to me that you had not, in fact, notified either Mr. Johnson or the Court of your change of address, nor put in a change of address form with the post office, but had only gotten this letter from Mr. Johnson when you heard from

---

**2.** Defendant was separately charged with violating the open container law and operating a motor vehicle without a license.

your ex-roommate or something; is that correct also?

[DEFENDANT]: Correct.

THE COURT: Okay.

[DEFENDANT]: I found out Thursday, and that's—I started on my new job Friday.

THE COURT: Okay.

[DEFENDANT]: And I work through the week.

THE COURT: ... And you had previously been told that the case was on the trial docket for today, by me, when you were here in October, right?

[DEFENDANT]: Right. Which I thought—right—Harold Johnson would be here.

THE COURT: Uh-huh. Well, when you found out last Thursday or whatever date it was that Mr. Johnson had, in fact, been granted leave to withdraw, did you hire a new attorney at that time?

[DEFENDANT]: Ma'am, no. No, I didn't.

THE COURT: Did not.

[DEFENDANT]: I just talked to Mitch Johnson[3]—and I'm supposed to call them—when he was here earlier.

THE COURT: You saw Mr. Johnson here today?

[DEFENDANT]: Yes.

THE COURT: And what are you supposed to call him about?

[DEFENDANT]: Now that I got this job, some payment.

THE COURT: Okay. But as I indicated to you, Mr. Kilburn, this is the third time the case is on the trial docket. And after you found out that your attorney had ... been granted leave to withdraw, you did nothing other than just show up here today asking, again, for more time; is that correct?

[DEFENDANT]: I was hoping to receive just a little more time.

THE COURT: Uh-huh.

[DEFENDANT]: Now, that I have this new job.

---

THE COURT: Is there anything else you want to put on the record, Mr. Kilburn?

[DEFENDANT]: I apologize for ... this happening.... Now that I've got this job, I can afford an attorney. Plus, I moved back—I did all this so I could get this taken care of. Moved back to my mom and dad's. That's it.

\* \* \*

THE COURT: Okay. Mr. Kilburn, I'm denying your motion for a continuance since it has been continued two previous times from the trial date, on the date of trial, at your attorney's request. And I'm authorizing the State to proceed at this time.

The state then adduced its evidence, which consisted of the testimony of the arresting officer and various exhibits, including the printout from the breathalyzer test run on defendant after his arrest. Defendant made no objections at any time during the proceeding, did not cross-examine the state's witness, and offered no evidence or argument of his own. The trial court found defendant guilty of driving while intoxicated.

On December 11, 1995, defendant appeared for sentencing. This time defendant was represented by counsel—specifically, by Harold Johnson, who had withdrawn as defendant's counsel in October but who now reentered his appearance as defendant's attorney of record. Johnson argued defendant could not be imprisoned because he had not knowingly waived his right to a lawyer at the bench trial. The trial court responded as follows:

THE COURT: I think we made a record, when we were here for the trial, as the prosecutor indicates. You know, I guess I wonder what a court is to do when you have a defendant like Mr. Kilburn, who by his own actions, I believe, intends to pervert the legal process.

This case was filed probably early in 1995. As early as March of '95, Mr. Kil-

---

**3.** Mitchell Johnson, Harold Johnson's partner, also participated in the trial proceedings on de-

fendant's behalf; several documents in the legal file bear his signature.

burn had an attorney, Mr. Dubinsky, who never appeared, I don't believe, for Mr. Kilburn. And so, at some point after about five months, the matter was finally set for trial on August 21st of '95 at 1:30.

... Mr. Dubinsky filed a motion to withdraw, ... in April of '95. And thereafter, Mr. Kilburn was given several continuances to get a new attorney. And as I said, it was finally set for trial on August 21st. I think on that very day, August 21st, is the date, Mr. Johnson, that you appeared with Mr. Kilburn. The matter was set for trial, and at your request, sir, I continued that matter for trial on ... October the 2nd.

MR. JOHNSON: I think that's true, Judge.

THE COURT: So that was the second trial setting. Then you filed a motion to withdraw before the trial date. And I think I told you, when you appeared and I granted your motion, that the Defendant was to be advised that the matter remained on the trial docket November 13th. And, in fact, I see here the memo you signed at my request, indicating that the matter was still on the trial docket. And that was about—almost six weeks after your motion was granted for leave to withdraw.

Mr. Kilburn then shows up on the third trial setting ... and again announces to the Court that he wants to hire a new attorney, and asked for a continuance. And frankly, I think Mr. Kilburn, by his actions, waived his right to an attorney. He, at no time, indicated that he was indigent, at no time requested a public defender, had two attorneys enter and withdraw, had the matter set for trial three separate times, and still showed up in court here with no attorney and wanted a continuance.

And I feel that his actions in that regard constitute a waiver. I had advised him on numerous occasions that if he wanted to have an attorney, he had the ability to hire one and he'd be expected to hire one. And so, ... I'm not going to hear Mr. Kilburn stand here and tell me that he shouldn't go to jail because he didn't have the right to have an attorney. He had every right to have an attorney. He had every opportunity to have an attorney and by his own actions he waived that right.

The court sentenced defendant to sixty days for driving while intoxicated. This appeal followed.

■ For his sole point on appeal, defendant contends he did not knowingly and intelligently waive his right to representation by counsel. After examining the record on appeal, we agree. The state did not meet its burden of proving defendant made a knowing and intelligent waiver of counsel.

We assume at the outset that defendant did not qualify to have counsel appointed to represent him. The state asserts in its brief that "[p]rior to trial, the Court made a determination that [defendant] did not meet the requirements to be appointed a public defender." As support for this claim, the state cites to the following comments of the court at the December 11, 1995, sentencing:

... [Defendant], at no time, indicated that he was indigent, at no time requested a public defender, ...

... I had advised [defendant] on numerous occasions that if he wanted to have an attorney, he had the ability to hire one and he'd be expected to hire one....

Nothing in the record shows the court made a finding, prior to trial, that defendant was not indigent; nor was a record made of any inquiry into defendant's financial situation. *See Snider,* 926 S.W.2d at 894; *compare State v. Yardley,* 637 S.W.2d 293, 295 (Mo. App. S.D.1982). On the other hand, nothing in the record shows defendant ever requested the court to find him indigent or asked that counsel be appointed. In fact, while defendant claimed at trial that he had previously lacked the funds for an attorney, he also asserted this was no longer the case and requested a continuance so he could hire counsel: "Now that I've got this job, I can afford an attorney."

Regardless of whether the trial court properly determined that defendant was not indigent, and therefore responsible for retaining his own lawyer, defendant was still entitled to be admonished of the perils of self-repre-

sentation *before* the matter went to trial. Here, there is no record of any proceeding prior to the trial date of November 13, 1995, in which defendant was told that he would have to proceed to trial without representation if he did not retain an attorney, or advised of the dangers and disadvantage of so proceeding. The transcript of the trial itself does not indicate defendant was ever previously told that he would have to represent himself *pro se* if he did not find a new lawyer, or admonished of the perils of such self-representation. The trial court, clearly frustrated at the delay (as evidenced by its remarks at the trial and at the subsequent sentencing), simply denied defendant's request for another continuance and ordered the state to proceed with its case.

In support of the trial court's proceeding to trial despite defendant's lack of representation, the state asserts, "The facts here demonstrate [defendant]'s attempt to impede the judicial process." We disagree. It is true defendants are not permitted to fraudulently forego participation in the trial and then claim denial of their right to counsel as part of a ruse or stratagem to delay and hinder the proceedings against them. *State v. Wilson,* 816 S.W.2d 301, 308 (Mo.App. S.D.1991). "Conscious attempts by a defendant to manipulate or intentionally delay the proceedings by refusing to hire private counsel should not be tolerated because such tactics imply 'a greater understanding of the proceedings and an understanding of the risks and complexities of a criminal trial.'" *Id.* (citation omitted). A defendant who purposely refuses to hire an attorney, but continues to refuse to waive his right to an attorney, cannot "cry foul when his trial commences without one." *Ehnes,* 930 S.W.2d at 447.

Here, the record does not support a finding that defendant purposefully refused to hire counsel in order to manipulate and delay the proceedings against him. Defendant was represented by counsel until Harold Johnson's motion to withdraw as defendant's attorney was sustained two weeks before the November 13, 1995, trial date. The trial court cited defendant's lack of cooperation with his attorney as one of the reasons for Johnson's withdrawal,[4] but did not elaborate, and there are no further details on defendant's lack of cooperation in the record before us. Moreover, defendant rehired Johnson after the trial and was represented by him at the sentencing; this supports an inference that defendant, if given more time, would have retained counsel. *See Schnelle,* 924 S.W.2d at 299.[5] Defendant's completely inadequate self-representation at the trial—he asked no questions, offered no evidence, and made no argument—belie a conscious manipulation of the criminal proceedings; rather,

> ... [t]he record indicates a defendant wholly bewildered by the proceedings, a bewilderment wrought by the defendant's ignorance of (1) the fact that he would be forced to trial without counsel if he did not hire one, (2) the crucial role of counsel in a criminal trial, and (3) all aspects of technical legal knowledge.

*Wilson,* 816 S.W.2d at 308 (footnote omitted).

The state points out in its brief that defendant was charged as a prior offender, and asserts this "means [defendant] had recent experience with the judicial process and the charge of driving while intoxicated. Therefore, [defendant] was not 'wholly bewildered by the proceedings.'" It is true that a defendant's prior contact with the criminal justice system may be a factor in determining whether the defendant's waiver of counsel is knowingly and intelligently made. *State v. Hunter,* 840 S.W.2d 850, 859 (Mo.banc 1992). In *Hunter,* however, the defendant had a criminal record dating back to the 1960's, admitted on the record that he had been involved in the criminal justice system on several prior occasions, and was charged as a persistent offender with four prior felony convictions. *See id.* By contrast, defendant's previous plea of guilty to a misdemeanor does not, in itself, support a finding of knowing and intelligent waiver of counsel.

---

4. Defendant's lack of cooperation was also given as the reason for the first attorney's withdrawal.

5. Johnson is also representing defendant on appeal.

The record before us on appeal fails to support a finding that defendant knowingly and intelligently waived his right to counsel. In these circumstances, it was error for the trial court to proceed with the November 13, 1995, trial. Examination of other decisions informs and supports our conclusion. *See State v. Yeargain*, 926 S.W.2d 883, 884–886 (Mo.App. S.D.1996) and *State v. Bethel*, 896 S.W.2d 497, 498–500 (Mo.App. S.D.1995); *compare State v. Ehnes*, 930 S.W.2d 441, 443–448 (Mo.App. S.D.1996) and *State v. Bilyeu*, 867 S.W.2d 646, 647–651 (Mo.App. S.D. 1993). Accordingly, the judgment of conviction is reversed and cause is remanded for new trial.

DOWD, P.J., and REINHARD, J., concur.