

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,         )
                                   )
       Plaintiff-Respondent,    )
                                   )
vs.                             )         No. SD37757
                                   )
ROBERT WILLIAM SHIELDS,   )     **Filed:  August 14, 2024**
                                   )
       Defendant-Appellant.     )

### APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

The Honorable Dean G. Dankelson, Judge

### AFFIRMED IN PART, VACATED IN PART, AND REMANDED

Robert William Shields ("Shields") appeals the judgment of the Circuit Court of Jasper County, Missouri ("trial court") convicting him of one count of child molestation in the first degree, one count of statutory sodomy in the first degree, one count of statutory rape in the first degree, and one count of statutory rape in the second degree, following a jury trial.  *See* sections 566.067, 566.062, 566.032, and 566.034.[1]  On appeal, Shields claims the trial court erred in (1) admitting irrelevant testimony at trial (Point I) and (2) sentencing Shields without legal counsel

---

[1] All references to sections 566.067, 566.062, and 566.032 are to RSMo Cum. Supp. 2010.  All references to section 566.034 are to RSMo 2016, including changes effective January 1, 2017, in which the offense of statutory rape in the second degree was reclassified from a class C felony to a class D felony.

1

present (Point II).  We affirm Shields's convictions but vacate the sentences and remand the case to the trial court for a new sentencing hearing.

## Factual Background and Procedural History

Shields's convictions are based on acts he committed against his step-daughter, C.P. ("Victim"), from the time Victim was approximately five years old until she was approximately 14 years of age.  At age 14, Victim told her mother about the acts Shields committed against her, and mother, in turn, reported what Victim told her to the Joplin Police Department.  Victim was interviewed by a forensic interviewer with the Children's Center of Southwest Missouri.  Shields was charged by information with one count of the class B felony of first-degree child molestation (Count I), one count of the unclassified felony of first-degree statutory sodomy (Count II), one count of the unclassified felony of first-degree statutory rape (Count III), and one count of the class D felony of second-degree statutory rape (Count IV) for the acts he committed against Victim.

Shields became Victim's step-father when Victim was five years old.  They lived in Joplin at that time.  Victim testified that when she was five or six years old, Shields rubbed his penis against her leg while they were lying in bed watching television.  Shields would intentionally walk into her room while she was changing and when she would cover up, "he would tell [her] not to and that dads are supposed to see that kind of thing."  Victim testified that when she was six or seven years old, while in Shields's bedroom or the office area, Shields took her hand and rubbed it up and down on his penis.  When she was eight or nine years old and while in the office of the house, Shields put his penis in her mouth when he pushed her shoulders down, grabbed his penis, put it in her mouth, and had her go up and down on it while his hands were on the back of her head.  When she was 13 years old and while she was lying on the couch

in the office, Shields grabbed her ankles, slid her toward him, took her clothes off, pulled his pants down, got on top of her, and shoved his penis inside her vagina. Victim testified the last time Shields had sex with her in the Joplin house was when she was a freshman in high school. Shields was sitting in his black office chair and had Victim turn around facing the opposite direction of him and sit down on his penis and he had her go up and down on his penis while his hands were on her hips.

The jury found Shields guilty on all counts. Following the discharge of the jury, the trial court took Shields into custody, set bond, and ordered Shields to return for sentencing March 15, 2021, at 9:00 a.m. Shields posted bond and failed to appear for sentencing on the scheduled sentencing hearing date. The bondsman informed the trial court that Shields's ankle monitor had been cut off and found at his residence. The trial court revoked Shields's bond and entered a warrant for his arrest without bond. Numerous bond forfeiture hearings were scheduled over the following year; at each hearing the bondsman stated he was unable to locate Shields and requested more time to locate him.

On or about March 18, 2022, one year after the scheduled sentencing hearing, Shields was arrested in Colorado and extradited back to Missouri. A sentencing hearing was held August 22, 2022, over 17 months after the initial sentencing hearing was scheduled. At the sentencing hearing on August 22, 2022, defense counsel stated that Shields wished to make a statement to the trial court:

> [Defense counsel]: Your Honor, prior to making an argument, my client does have a statement he would like to read the Court, if that's okay.
>
> [Court]: Mr. Shields.
>
> [Shields]: Your Honor, I believe that I have a conflict of interest with my attorney and his law firm. I don't believe that entering into sentencing or hearing their motion for new trial would be appropriate at this time. On, Tuesday, August 16th

3

of 2022, I have filed a federal lawsuit, at the Western Division Courthouse in Kansas City, against the Rhoades and Pierce Law Firm, et al, as well as the Jasper County Prosecuting Attorney, et al, and the Jasper County Sheriff, et al, all of which have violated my Fifth, Sixth, and Fourteenth Constitutional Amendment Rights in this adversarial process. At this point, and at no point, do I waive my right to counsel, but I fire the Rhoades and Pierce Law Firm, et al, to proceed pro se at this current stage. I will also request to be appointed alternate defense counsel at this time, Your Honor.

[Court]: Well, the Court is not going to allow you to create a conflict by filing a federal lawsuit and to come in here and say we are going to delay sentencing. So, if you wish to terminate the services of [defense counsel], I am going to let you do so, but we are going to proceed with sentencing today one way or the other.

[Shields]: I do, but the lawsuit has already been filed.

[Court]: I understand that, but you -

[Shields]: And it wasn't to delay the process, --

[Court]: Well -

[Shields]: -- it was because my Constitutional Amendments have been violated.

[Court]: You created this apparent conflict that you are now claiming. I am not going to let you do that and then say, well, because I filed this suit, there is a conflict of interest and we can't proceed to sentencing. We are proceeding to sentencing today.

[Shields]: That's fine. I understand, but how did I create the conflict --

[Court]: Because you filed the --

[Shields]: -- with them violating my Constitutional Rights?

[Court]: You said that the law suit has given rise to a conflict of interest. You filed it.

[Shields]: I believe that we have a conflict of interest due to the --

[Court]: I understand. My question -

[Shields]: -- due to them violating my Constitutional Rights.

[Court]: My question to you is; do you want to proceed today to sentencing, with the help of [defense counsel] or without?

4

[Shields]: I don't believe he has my best interest and I believe we have a conflict of interest because of that, so -

[Court]: All right. [Defense counsel], do you wish to withdraw at this point in time?

[Defense counsel]: Yes, pursuant to my client's wishes.

[Court]: I will allow you to withdraw from representation of [Shields] at this point in time.

[Defense counsel]: Thank you. Your Honor, may I be excused?

[Court]: You are excused.

The trial court allowed defense counsel to withdraw pursuant to Shields's wishes and proceeded with the sentencing hearing without counsel present. After defense counsel left, the trial court overruled Shields's motion for new trial previously filed by defense counsel and proceeded to sentencing. Shields testified during the sentencing hearing regarding his various claims of ineffective assistance of trial counsel. When asked by the trial court if there was any testimony he wished to present in aid of sentencing, Shields stated there were three witnesses his trial counsel failed to present at trial, that he wanted those witnesses at the sentencing hearing, and that his defense counsel failed to subpoena them or otherwise call them to testify:

[Court]: We can then proceed to sentencing. Mr. Shields, is there any testimony that you wish to present in aid of sentencing here today?

[Shields]: Your Honor, there was three witnesses that were supposed to be called at trial. Not one of them received a subpoena or were called and given the date of trial. I'd like each one of those to be present and called here to testify today.

[Court]: Had you notified [defense counsel] about that or had them subpoenaed today?

[Shields]: I did. I've tried to have contact with [defense counsel] when I first got to the Jasper County Jail. He refused to return any of my mother's emails or her calls and he did not come and contact me until Friday afternoon and so we have had no time to get any of this done.

5

The trial court, without comment to Shields, asked the State, "[Prosecutor], anybody you wish to present?" The State then presented victim statements of both Victim and her mother. At the conclusion of the victim statements, the trial court again asked Shields if he "wish[ed] to say anything in aid of sentencing." Shields made a brief statement regarding Victim, then stated he did not feel it would be appropriate to talk about anything further without legal representation. Immediately prior to pronouncing its judgment and sentence, the trial court asked Shields if he could think of any legal reason sentence should not be pronounced. Shields stated, "Well, because I don't have counsel representing me that has my best interest."[2]

> COURT: The Court will make the following docket entry: The Defendant appears in person, along with Attorney Jonathon Pierce. You need to please stand, Mr. Shields. The State appears by Theresa Kenney – actually the Court is going to have to change that. The State – the Defendant appears in person, in custody of the Jasper County Sheriff's office. The State appears by Theresa Kenney, Prosecuting Attorney. Defendant's Motion for New Trial is overruled. The sentencing assessment report is discussed with the Defendant. Mr. Shields, can you think of any legal reason why the Court should not pronounce sentence at this point in time?
>
> DEFENDANT: Well, because I don't have counsel representing me that has my best interest.

The trial court sentenced Shields to 15 years' imprisonment for child molestation in the first degree (Count I); 99 years' imprisonment for statutory sodomy in the first degree (Count II); life imprisonment for statutory rape in the first degree (Count III); and seven years' imprisonment for statutory rape in the second degree (Count IV), each term of imprisonment to be served

---

[2] It should be noted that at this point, defense counsel had withdrawn and had been excused from the courtroom. Shields had no counsel representing him.

consecutively to the other terms.  *See* sections 558.011.1(2),[3] 566.062.2, 566.032.2, and 558.011.1(4).[4]

**Points on Appeal**

**<u>Point I</u>**

Shields asserts the trial court abused its discretion in allowing certain testimony by Victim.  The State argues the escape rule applies and this Court should dismiss point one of his appeal without addressing the merits of his claim.  We agree with the State.

*Analysis*

"The escape rule operates to deny the right of appeal to a defendant who escapes justice." ***State v. Logan***, 687 S.W.3d 680, 684 (Mo. banc 2024) (quoting ***State v. Troupe***, 891 S.W.2d 808, 809 (Mo. banc 1995)).  "Missouri appellate courts have held that the escape rule applies 'equally to persons who avoid impending or immediate incarceration as well as to persons avoiding the possibility of incarceration through a revocation of probation or parole.'"  ***Id.*** (quoting ***Wartenbe v. State***, 583 S.W.3d 115, 121 (Mo. App. E.D. 2019)).  "A defendant who escapes or flees the jurisdiction of the court either during trial or in the process of post-trial proceedings[,]" including sentencing, forfeits his or her rights to an appeal on the merits.  ***State v. Hall***, 504 S.W.3d 88, 89 (Mo. App. E.D. 2016) (citing ***State v. Crump***, 128 S.W.3d 642, 642-43 (Mo. App. E.D. 2004)).  A defendant's failure to appear at sentencing constitutes an "escape" for purposes of the rule.  ***State v. Freeman***, 619 S.W.3d 550, 552 (Mo. App. S.D. 2021); ***Portis v. State***, 214 S.W.3d 349, 350 (Mo. App. E.D. 2007) ("Willful failure to appear for sentencing

---

[3] RSMo Cum. Supp. 2010.

[4] RSMo 2016, including changes effective January 1, 2017, which authorized term of imprisonment for a class D felony, changed from a maximum of four years to a maximum of seven years.

7

invokes the escape rule."); ***Crump***, 128 S.W.3d at 643 ("A defendant's failure to appear constitutes an 'escape' for purposes of applying the escape rule.").

Whether or not to apply the escape rule is discretionary with this Court. ***State v. Hogan***, 610 S.W.3d 417, 419 (Mo. App. S.D. 2020).

> A reviewing court may invoke procedural rules to protect the orderly and efficient use of its resources. In applying the escape rule, the relevant inquiry is whether the escape adversely affects the criminal justice system. If so, dismissing the escapee's appeal is appropriate. This determination is left to the sound discretion of the appellate tribunal.

***Logan***, 687 S.W.3d at 685 (quoting ***Troupe***, 891 S.W.2d at 811).[5]  Shields deliberately fled to Colorado to evade sentencing for over a year which justifies application of the escape rule here.

After the jury found Shields guilty on all counts on February 11, 2021, the trial court took him into custody, set a bond, and set a sentencing hearing for March 15, 2021, at 9:00 a.m. Shields posted bond and did not show up at the March 15 sentencing hearing.  Instead, Shields cut off his ankle monitor, a violation of his bond conditions, and fled, avoiding capture for over one year.  His bondman appeared numerous times before the trial court on bond forfeiture hearings during that year, always asking for additional time to locate Shields.  Finally, on or about March 18, 2022, Shields was arrested in Colorado and extradited back to Missouri.  The State and U.S. Marshal's Office expended time, money, and manpower for over one year to locate, apprehend, and extradite Shields.  Shields acknowledged that it was his decision to flee;

---

[5] Reasons justifying application of the escape rule include:

> (1) the need for a court to have control over a defendant before making a decision on appeal; (2) curtailment of administrative problems caused by [a] defendant's absence; (3) preventing prejudice to the State in the event of remand for a new trial; (4) preventing defendants from selectively abiding by court decisions; (5) discouraging escape; (6) encouraging voluntary surrender; (7) preserving respect for the criminal justice system; and (8) promoting the dignified operation of the appellate courts.

***Hogan***, 610 S.W.3d at 419.

8

that he fled because he was "scared to death" and "was avoiding being captured." The trial court indicated Shields also attempted to change his appearance to elude capture.

The determination to apply the escape rule and dismiss Shields's point on appeal "discourages other defendants from attempting an escape from sentencing and preserves respect for the criminal justice system." *Hogan*, 610 S.W.3d at 419 (quoting *State v. Kelsall*, 545 S.W.3d 355, 357 (Mo. App. S.D. 2018)). By absconding from sentencing and evading justice, Shields not only avoided receiving the consequences of his criminal convictions by remaining a free man for an entire year, he also wasted valuable judicial and law enforcement resources, and he exhibited disrespect for Missouri's criminal justice system. Point I is dismissed.

## Point II

In Point II, Shields claims the trial court "erred or plainly erred" in sentencing him without counsel in violation of his right to counsel and due process of law pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution. Shields argues the trial court conducted an inadequate *Faretta*[6] hearing in that it failed "to review with [Shields] any of the perils of self-representation[,]" failed to "follow the statutory admonitions of section 600.051,"[7] and failed to present, and have him sign, a written waiver-of-counsel form. Because we determine from the record that Shields "affirmatively told the trial court he was not waiving his right to counsel," he

---

[6] "A *Faretta* hearing is an evidentiary hearing to determine that a defendant who chooses to waive his Sixth Amendment right to counsel is doing so knowingly and intelligently as set forth in *Faretta v. California*, 422 U.S. 806 (1975)." *Ellswood v. State*, 689 S.W.3d 813, 816 n.6 (Mo. App. S.D. 2024) (citing *State v. Lavender*, 680 S.W.3d 119, 129-30 (Mo. App. S.D. 2023), *State v. Teter*, 665 S.W.3d 306, 313 (Mo. banc 2023)).

[7] RSMo 2016.

never made a knowing, voluntary, or intelligent waiver of counsel at sentencing, and he objected to not having counsel present at the sentencing hearing, the trial court erred by sentencing Shields without counsel present.[8]

*Standard of Review*

A constitutional claim must be made at the first opportunity in order to be preserved for appellate review. *State v. Kunonga*, 490 S.W.3d 746, 759 (Mo. App. W.D. 2016). Alleged errors which occur during sentencing, after the time to file a motion for new trial, are preserved by raising the issue during the sentencing proceeding. *Teter*, 665 S.W.3d at 317; *see also State v. Whirley*, 666 S.W.3d 223, 229 (Mo. App. W.D. 2023) (quoting *State v. Durham*, 371 S.W.3d 30, 39 (Mo. App. E.D. 2012) ("Sentencing error must be raised during the sentencing hearing to be preserved for appellate review."). Shields objected to the trial court proceeding with sentencing him without counsel present at the sentencing hearing and preserved his claim for appellate review. This Court's review of Shields's claim that he did not knowingly, voluntarily, or intelligently waive counsel at sentencing is *de novo*. *State v. Masters*, 651 S.W.3d 863, 867 (Mo. App. W.D. 2022).

---

[8] Point II is directed toward alleged trial court error after Shields's recapture and, therefore, the escape rule does not apply. The escape rule applies only to errors during trial that occurred before the "escape." *Freeman*, 619 S.W.3d at 552. Trial court errors occurring after recapture remain appealable. *Nichols v. State*, 131 S.W.3d 863, 865 (Mo. App. E.D. 2004); *Freeman*, 619 S.W.3d at 552 n.2 ("The escape rule does not apply to errors that occur *after* the defendant is returned to custody."); *Shearin v. State*, 440 S.W.3d 586, 588 (Mo. App. S.D. 2014) (quoting *Robinson v. State*, 854 S.W.2d 393, 395 (Mo. banc 1993)) ("[T]he escape rule should not be used to dismiss challenges to post-capture errors."); *Fogle v. State*, 99 S.W.3d 63, 65 (Mo. App. E.D. 2003) ("Once a defendant escapes and has been returned to custody, he is entitled to appeal any errors that occurred post-capture."). Therefore, while the escape rule applies to Point I, it does not apply to Point II assigning trial court error during sentencing after Shields was recaptured and extradited back to Missouri. *Hogan*, 610 S.W.3d at 419-20.

*Analysis*

The Sixth Amendment and Fourteenth Amendment guarantee a criminal defendant the constitutional right to the assistance of counsel. *State v. Grant*, 537 S.W.3d 426, 428 (Mo. App. S.D. 2018); *State v. Keeth*, 203 S.W.3d 718, 726 (Mo. App. S.D. 2006).[9] This right implicitly grants the correlative right to waive counsel and represent oneself. *State v. Fritz*, 480 S.W.3d 316, 323 (Mo. App. S.D. 2016); *see also Cox*, 659 S.W.3d at 654; *Grant*, 537 S.W.3d at 428; *Keeth*, 203 S.W.3d at 728; *Teter*, 665 S.W.3d at 313 (quoting *Faretta*, 422 U.S. at 819) ("Although not stated in the Amendment in so many words, the right to self-representation–to make one's own defense personally–is thus necessarily implied by the structure of the Amendment."). In order to pass constitutional muster, a defendant's waiver of counsel must be timely, unequivocally, knowingly, and intelligently invoked. *Fritz*, 480 S.W.3d at 324; *see also Cox*, 659 S.W.3d at 654 (holding due process mandates that a waiver of counsel must be knowingly and intelligently made). Shields asserts he did not make a knowing, voluntary, or intelligent waiver of counsel at sentencing and that, in fact, he specifically told the trial court he was not waiving his right to counsel. We agree.

> "The decision whether to allow a criminal defendant to waive the right to counsel and exercise the right of self-representation is one of the most sensitive rulings required of a trial court." [*State v.*] *Black*, 223 S.W.3d [149,] 155 [(Mo. banc 2007)]. Accordingly, the trial court has a duty to determine whether a knowing and intelligent waiver has been made. *State v. Wilson*, 816 S.W.3d 301, 305-06 (Mo. App. S.D. 1991). To properly execute this duty, a trial court must satisfy two requirements before it can conclude a defendant has effectively waived the right to counsel. *State v. Ndon*, 583 S.W.3d 145, 154 (Mo. App. W.D. 2019); [*State v.*] *Masters*, 651 S.W.3d [863, 868 (Mo. App. W.D. 2022)]. First, there must be a thorough evidentiary hearing that establishes the defendant understands what rights and privileges are being waived, as well as the dangers associated with waiving those rights.[] *Ndon*, 583 S.W.3d at 155. "The defendant should be given such advice *on the record* as is necessary to establish he or she is acting voluntarily,

---

[9] "This right applies to the [State] through the Due Process Clause of the Fourteenth Amendment." *Teter*, 665 S.W.2d at 313.

11

knowingly and intelligently in waiving counsel." *State v. Rawlins*, 248 S.W.3d 680, 684 (Mo. App. W.D. 2008) (quoting *State v. Kilburn*, 941 S.W.2d 737, 739 (Mo. App. E.D. 1997)). If the record does not disclose that the defendant's waiver of the right to counsel was a knowing and intelligent one, the presumption arises that it was not. [*State v.*] *Sullivan*, 640 S.W.3d [149, 159 (Mo. App. E.D. 2022)]. Second, the defendant must be given the opportunity to sign the written waiver-of-counsel form mandated by section 600.051.[] *Ndon*, 583 S.W.3d at 155. Section 600.051.1(1) and (3) requires, among other things, that the written waiver contain the nature of the charges and the maximum possible sentence for those charges. A violation of section 600.051 constitutes a manifest injustice or miscarriage of justice. *Masters*, 651 S.W.3d at 868.

*Cox*, 659 S.W.3d at 654-55 (applying the holding of ***Faretta v. California***, 422 U.S. at 835, that "in order to represent himself, the accused must knowingly and intelligently forgo" the relinquished benefits of counsel) (footnotes omitted).

These rights apply at all stages of a criminal proceeding, including sentencing. ***U.S. v. Crawford***, 487 F.3d 1101, 1105 (8th Cir. 2007). It is the State's burden to prove that an unrepresented defendant waived the right to counsel and that such waiver was "knowingly and intelligently" made. ***Kunonga***, 490 S.W.3d at 760. "Where there is an 'unquestioned absence of counsel,'" the State bears the burden of demonstrating a valid waiver. ***Id.*** (quoting ***State ex rel. Garrett v. Gagne***, 531 S.W.2d 264, 268 (Mo. banc 1975)).

Shields did not expressly waive his right to counsel.[10] Although he stated he was firing his attorney, he stated that "[a]t this point, and at no point, do I waive my right to counsel"; he requested the appointment of "alternate defense counsel"; he stated he did not feel it would be appropriate to talk about anything further without legal representation; and he stated that sentences should not be entered "because I don't have counsel representing me that has my best interest." Regardless of Shields's repeated assertion of his right to counsel and that he was not

---

[10] The State concedes in its brief, "[d]efendant did not expressly waive his right to counsel."

12

waiving this right, the trial court sentenced Shields without counsel present without any

discussion with Shields regarding his right to counsel or waiver of the right to counsel.

The State argues in its briefing that Shields waived his right to counsel by implication

through his actions by obstructing the proceeding, attempting to cause unnecessary delay, and

"intentionally creat[ing] a conflict of interest with counsel[,]" therefore, a *Faretta* hearing was

not required and, therefore, the trial court did not error in sentencing Shields without an attorney

present.[11]  However, in each case cited by the State in support of its argument, the court offered

defendants court-appointed counsel or to proceed *pro se*, something the trial court failed to offer

Shields in this case.[12]  Here, by not giving Shields the option of having court-appointed counsel

---

[11] This Court has held a criminal defendant may impliedly waive one's right to counsel by his or her actions.  ***State v. Kilburn***, 941 S.W.2d 737, 739 (Mo. App. E.D. 1997); ***State v. Wilson***, 816 S.W.2d 301, 305 (Mo. App. S.D. 1991) ("[A defendant's] failure to retain an attorney after being afforded ample opportunity [to do so] manifested a decision to represent himself, . . . an implied waiver of his right to counsel due to his conduct."); ***State v. Yardley***, 637 S.W.2d 293, 295 (Mo. App. S.D. 1982) (holding that where a defendant stated that he wanted representation by counsel but refused to hire an attorney, "it is a waiver implied by his actions); *see also* ***United States v. Sanchez-Garcia***, 685 F.3d 745, 751-52 (8th Cir. 2012) (holding that a defendant's choice to discharge appointed counsel after being warned he must choose between continuing with counsel or proceeding *pro se* is a waiver of right to counsel by conduct); ***Meyer v. Sargent***, 854 F.2d 1110, 1113-1114 (8th Cir. 1988) (holding that a defendant's decision to have counsel removed after being cautioned that no replacement counsel would be appointed was the functional equivalent of a voluntary waiver of right to counsel).

[12] A defendant has no right to, and the trial court should not allow a defendant to, manipulate his right to counsel as a means to delay or obstruct the orderly process of trial.  ***Meyer***, 854 F.2d at 1113; ***Kilburn***, 941 S.W.2d at 743 (finding that a defendant cannot continually refuse to waive his right to counsel and also continue to refuse to hire counsel as a conscious attempt to delay trial); ***Wilson***, 816 S.W.2d at 308 (holding that a defendant is not permitted to consciously place the court in a position "where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel"). However, in each of the cases relied on by the State in support of its argument, the defendant was advised, at least to an extent, of the consequences of proceeding *pro se*.  ***U.S. v. Sanchez-Garcia***, 685 F.3d at 752

13

or to proceed *pro se*, we cannot infer Shields chose to proceed *pro se* instead of having counsel present.

Clearly, the trial court was frustrated. Shields fled its jurisdiction and eluded authorities for over one year. Frustrating as his actions were prior to sentencing, this Court cannot find Shields's first request for alternate counsel at the sentencing hearing constituted an obstruction of justice. This Court fails to conclude based on the facts before us that Shields knowingly and intelligently waived his right to counsel when he was sentenced.

Point II is granted, which requires Shields's sentences be vacated and the cause remanded to the trial court for re-sentencing.

**Conclusion**

This Court chooses not to review Shield's first point on appeal pursuant to the escape rule and further concludes the trial court denied Shields his constitutional right to counsel during the sentencing portion of his trial. Shields's convictions are affirmed, but the sentences imposed on each count are vacated, and the matter is remanded to the trial court for re-sentencing.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS

---

(emphasis added) (defendant necessarily chose self-representation **after having been warned of the consequences**); *Meyer*, 854 F.2d at 1114 (emphasis added) ("[T]he record shows that [the judge], during the course of the probation revocation proceedings and the trial, **thoroughly explained to [defendant] his rights in presenting his defense**." But, defense counsel was also placed on "stand-by" and participated somewhat in the trial.). A third case cited by the State, *U.S. v. Studley*, 783 F.2d 934 (9th Cir. 1986), involved appellate review of the denial of a third continuance for the purpose of hiring counsel. The Ninth District held it was "fair and reasonable" to deny a third continuance after granting the defendant two continuances previously in order to do so. *Id.* at 938-39.